Fuld, J.
 

 On November 14,1957, Terminal Auxiliar Marítima, as charterer, chartered a vessel from respondent Ocean Trading Corporation under a voyage charter agreement for the carriage of a cargo of sugar from Cuba to Europe. The agreement provided that11 Any dispute that may arise under this Charter [is] to be settled by arbitration, each party appointing an Arbitrator, and should they be unable to agree, the decision of an Umpire selected by them to be final.” Shortly thereafter, Terminal entered into an agreement with Gralban Lobo Trading Company whereby Gralban, as subcharterer, chartered the vessel from Terminal under the same terms as those of Terminal’s agreement with Ocean. In January, 1958, Ocean assigned its earnings from the agreement to Winkler Credit Corporation to satisfy its debt to the latter, and the present dispute is between Winkler and Terminal. Ocean continued to make the charter arrangements, however, and in March, 1958 entered into a time charter of the S. S.
 
 Gape Nelson
 
 for the transportation of the sugar with the owners of that vessel, Ralli Brothers, Ltd. The vessel began loading at the first of the two Cuban loading ports.
 

 According to Terminal, Ocean failed to pay Ralli, and, after the cargo was half loaded, the master of the vessel, acting on the owners’ instructions, refused to deliver bills of lading to
 
 *297
 
 Terminal unless Terminal undertook to perform Ocean’s duties under the time charter. When, after repeated requests by Terminal, Ocean failed to act, Terminal, in order to avoid further losses, made arrangements directly with Ralli for the affreightment with respect to which it had obligated itself to Galban, and the sugar was transported, pursuant to this alternate charter agreement, to Rotterdam. On the other hand, according to Ocean and Winkler, it was Terminal which breached the agreement. Desirous of obtaining the benefit of lowered freight rates, they say, Terminal conspired with Ralli to have the latter claim a default by Ocean in payment and then contract directly with Terminal for the transportation of the cargo at the lower rates.
 

 At all events, after the carriage was completed, Winkler brought suit against Terminal in the Supreme Court, New York County, for Terminal’s alleged breach of its charter agreement with Ocean. Being unable to attach any property of Terminal, a Cuban corporation, in this jurisdiction, Winkler instituted two actions against Galban, one in New York and one in Rotterdam, on the theory that Galban, as shipper, had failed to pay the freight due under Ocean’s voyage charter with Terminal. Winkler succeeded in attaching property of Galban in each jurisdiction, and Galban called upon Terminal to hold it harmless in a dispute in which it was not involved.
 

 Terminal thereupon commenced negotiations with Winkler and, as a result, the parties entered into a stipulation pursuant to which Terminal agreed voluntarily to submit to the in personam jurisdiction of the New York court by putting in “ A full and general appearance ’ ’ in Winkler’s suit against it and to post a bond in the amount of $75,000 on behalf of itself and Galban to secure Winkler’s claims, if any, against them. Winkler, in turn, promised to withdraw its New York and Rotterdam attachments. These arrangements were agreed to, 1 ‘ without prejudice ’ ’ to any rights and remedies available to the parties.
 

 It was shortly after entering into this stipulation and effecting the withdrawal of the attachments that Terminal instituted the present proceeding in which it sought an order directing arbitration and staying the actions brought by Winkler against it and Galban in New York. Winkler opposed arbitration on
 
 *298
 
 the ground, first, that there was no arbitrable controversy and, second, that Terminal had waived its right to arbitrate by entering into the stipulation. The court at Special Term decided in Terminal’s favor and the Appellate Division unanimously affirmed.
 

 In support of its claim that there is no arbitrable controversy, Winkler contends, in effect, that Terminal’s substitute arrangements for the performance of the charter agreement amounted to a “ termination ” and “ cancellation ” of such charter agreement. That being so, argues Winkler, there was a 1 ‘ termination ” of all its rights under the charter, including Terminal’s right to arbitration.
 

 It is settled that under a broad provision for arbitration, such as we have here, arbitration may be had as to all issues arising subsequent to the making of the contract. (See, e.g.,
 
 Matter of Potoker [Brooklyn Eagle],
 
 2 N Y 2d 553;
 
 Matter of Lipman [Haeuser Shellac Co.],
 
 289 N. Y. 76;
 
 Matter of Hellenic Lines [Terminal Auxiliar Maritima, S. A.],
 
 3 A D 2d 821, motion for leave to appeal denied 3 N Y 2d 705.) The so-called “ termination ” or “ cancellation,” relied upon by Winkler to defeat the arbitral process, was nothing more or less than a “ termination ” of a contract for an alleged breach or nonperformance of its terms. That does not put an end to the right to arbitrate claims accruing prior thereto, for, if it did, an arbitration clause could rarely, if ever, be carried out. In point of fact, the appellant does not regard the contract as having been “ cancelled ” in any real sense, since it is actually suing for its breach in the action now stayed. If the contract had been so “cancelled,” then neither party would have a claim under it, and Winkler’s lawsuit would be ripe for dismissal.
 

 Although the court could not compel arbitration if an issue exists as to whether the contract ever came into existence, section 1450 of the Civil Practice Act, we have declared, “ seems to imply that all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators. It is to be noted that * * * the statute only requires the contract to have been made and does not require that it shall continue to be in existence.”
 
 (Matter of Lipman [Haeuser Shellac Co.],
 
 289 N. Y. 76, 80,
 
 supra.)
 

 
 *299
 
 In the present case, the dispute between Terminal and Ocean had its origin in the charter agreement, and the controversy primarily concerns their rights and obligations under it. It was the breach by Ocean, or by Terminal, as the case may be, which gave rise to the dispute now sought to be arbitrated, and it is just such disputes with which the arbitration provision was designed to deal. In short, the dispute having arisen “ subsequent to the making of the contract,” the controversy is an arbitrable one within the intendment of the charter provision. (Cf., e.g.,
 
 Matter of Hellenic Lines [Terminal Auxiliar Maritima, S. A.],
 
 3 A D 2d 821, motion for leave to appeal denied 3 N Y 2d 705,
 
 supra.) Alpert
 
 v.
 
 Admiration Knitwear Co.
 
 (304 N Y 2d 1), upon which "Winkler relies, is not in point, for there the court found that no bona fide dispute existed; in other words, there was no “ failure to comply ” with the contract within the meaning of section 1450.
 

 As noted above, in order that Gtalban might be relieved of the attachments obtained by Winkler against its property in New York and Rotterdam, Terminal stipulated to submit itself to the “jurisdiction” of the Supreme Court by filing a “full and general appearance ” in Winkler’s suit against it and to give Winkler further assurance of recovery by posting a $75,000 bond as security for any “ judgment ” which Winkler might obtain. Winkler urges that this stipulation to submit to the jurisdiction of the court necessarily implies an agreement on Terminal’s part to permit the suit to continue and not to seek arbitration. In addition, Winkler contends that Terminal’s bond, given to secure any ‘1 judgment ’ ’ obtained against it, does not cover an arbitration award and, consequently, Terminal, in seeking arbitration, is violating a vital term of the stipulation.
 

 Although a party may by conduct waive his right to arbitration (see, e.g.,
 
 Matter of Zimmerman
 
 v.
 
 Cohen,
 
 236 N. Y. 15; cf.
 
 Matter of Haupt
 
 v.
 
 Rose,
 
 265 N. Y. 108;
 
 Matter of Hosiery Mfrs. Corp.
 
 v.
 
 Goldston,
 
 238 N. Y. 22), it is doubtful that the mere entering of a general appearance by a defendant and the posting of a bond to secure the payment of any judgment which might be recovered would constitute such a waiver — particularly when the serving of an answer and the making of a motion to dismiss a complaint does not. (See, e.g.,
 
 Matter of Haupt
 
 v.
 
 Rose,
 
 265 N. Y. 108,
 
 supra; Short
 
 v.
 
 National Sport Fashions,
 
 264 App.
 
 *300
 
 Div. 284.) We need not, though, decide that question, for the stipulation herein clearly evinces the parties’ intention that no such right was to be waived. It obviously relates only to Terminal’s submission of its person to the court’s jurisdiction and not to the relinquishment of any other right or remedy. The stipulation not only declares, twice, that it is “ without prejudice to the substantive and procedural rights, remedies, or defenses available to the parties ’ ’, but it also recites that its provisions ‘
 
 ‘
 
 pertain * * *
 
 only
 
 to the matter of the jurisdiction of this Court and to the posting of security.” (Italics supplied.) If Winkler had desired to eliminate the right to arbitration from the “rights” thus explicitly reserved, it would have been a simple matter to insert such a provision. The stipulation was drawn by counsel for both parties, and it is difficult to believe that such an important provision would have been omitted if Winkler had actually intended it to be included.
 

 We might well conclude at this point, for, as demonstrated, there is an arbitrable dispute and there was no waiver by Terminal of its right to arbitrate it.
 

 However, we add.these additional words to answer Winkler’s claim that a waiver must have been intended because the bond which Terminal furnished was of value only if the action at law continued. More particularly, it is said, the bond covered payment only of a judgment in that action and not of an arbitral award and, consequently, the argument proceeds, it is unreasonable to suppose that Winkler would have given up valuable attachments for a bond which would become worthless upon institution of an arbitration proceeding. The short answer is that the surety which wrote the bond, the Seaboard Surety Company, has, by letter, delivered to Terminal for transmittal to Winkler, solemnly and ‘ ‘ irrevocably ’ ’ assured the parties involved that its bond “is intended and deemed to secure Winkler Credit Corporation for the payment of any final and confirmed award, together with costs and expenses as may be awarded thereon or allowed by law, which may be recovered against Terminal or Gfalban Lobo or both in any arbitration or arbitrations to which the claims stated in the above mentioned litigations may be referred.” In view of this, there can be no possible doubt that the bond furnished by Terminal is to be read to cover any arbitral award in Winkler’s favor. And, indeed,
 
 *301
 
 counsel for Terminal agreed upon the argument before us that such was the meaning and effect to be given the bond.
 

 As to Winkler’s further point, it is enough to observe that, under the circumstances of this case, we find Special Term’s order unexceptionable insofar as it directs Ocean, as well as Winkler, to proceed to arbitration and requires those parties to appoint a single arbitrator.
 

 The order appealed from should be affirmed, with costs.
 

 Chief Judge Conway and Judges Desmond, Dye, Froessel, Van'Voorhis and Burke concur.
 

 Order affirmed.