OPINION OF THE COURT
 

 Levine, J.
 

 In 1988, appellant Primex International Corporation was retained, on a transaction-by-transaction basis, by respondent Wal-Mart Stores, Incorporated as a buying agent for purchases of South American manufactured consumer goods. Two years later, Wal-Mart appointed Primex as its exclusive buying agent and, on February 6, 1990, the parties executed a three-year "Service Agreement” (the 1990 Agreement) which defined their rights and obligations, the services appellant was to provide and the commission structure governing each transaction it brokered during the term of the Agreement. The 1990 Agreement contained a New York choice of law provision and gave either party the right to terminate upon six months’ notice. It also included a broad arbitration clause which provided that:
 

 "/a]ny and all disputes arising out of, under or in connection with this Agreement including, without limitation, the validity, interpretation, performance and breach thereof
 
 shall be settled by arbitration in New York City, New York, pursuant to the Rules of the American Arbitration Association in force at the time arbitration is demanded” (emphasis supplied).
 

 In addition, the 1990 Agreement contained a general merger or integration clause which stated:
 

 "This Agreement may not be amended, changed, modified, or altered except by a writing signed by both parties. All prior discussions, agreements, understandings or arrangements, whether oral or written, are merged herein and this document
 
 *597
 
 represents the entire understanding between the parties.”
 

 After the 1990 Agreement expired, the parties entered into a second "Service Agreement” (the 1993 Agreement) which controlled the parties’ South American transactions over the next two years, until its stated termination date of February 6, 1995. The 1993 Agreement contained the same arbitration, New York choice of law, notice of termination, and merger provisions as the 1990 Agreement.
 

 Upon expiration of the 1993 Agreement, a third contract containing the same arbitration, choice of law, termination and merger clauses was forwarded by Primex’s attorney to Wal-Mart corporate counsel. Wal-Mart’s counsel removed the arbitration clause contained in the signed draft and changed the title of the Agreement to "Buying Agency Agreement”. These changes were accepted by Primex, effective February 7, 1995. Thus, as revised, the terms of the 1995 Agreement were essentially identical to the earlier Agreements, except that it did not contain any provision for the arbitration of disputes arising out of, or in connection with, that Agreement.
 

 Four months later, Wal-Mart advised Primex that, pursuant to the six-month notice provision set forth in the 1995 Agreement, it was terminating their business relationship effective December 1. However, in early October, upon allegedly learning that Primex had been soliciting and accepting kickback payments from the South American vendors in violation of the parties’ three Agreements, Wal-Mart immediately terminated appellant as its buying agent. Wal-Mart subsequently commenced an action against Primex in the Circuit Court of Benton County, Arkansas, for civil and punitive damages and an accounting, based on causes of action for fraud and breaches of the three successive written Agreements entered into between the parties in 1990,1993, and 1995. The gravamen of the causes of action was that Primex had been covertly demanding, charging, and accepting kickbacks from certain South American vendors for placing Wal-Mart orders with those vendors "for at least eight years” and passing these payments on to Wal-Mart in the purchase prices of the merchandise. Wal-Mart specifically alleged that this conduct constituted a breach of "each and every buying agency agreement”.
 

 Upon commencement of Wal-Mart’s Arkansas suit, Primex served it with a demand for arbitration, pursuant to the arbitration clauses contained in the 1990 and 1993 Agree
 
 *598
 
 ments. When Wal-Mart rejected, the demand, Primex commenced this CPLR article 75 proceeding to compel arbitration of the parties’ dispute in New York and to stay the Arkansas action.
 

 In its opposition papers, Wal-Mart asserted a counterclaim seeking to stay arbitration under CPLR 7503. The principal ground advanced by Wal-Mart in its answer was that the general merger clause contained in the 1995 Agreement — coupled with the absence of an arbitration clause — had the legal effect of impliedly superseding the 1990 and 1993 Agreements, thereby eliminating any obligation to arbitrate claims arising under the two prior Agreements.
 

 Supreme Court rejected Primex’s petition to stay the Arkansas action, concluding that the contractual language contained in the 1995 Agreement was to be given retroactive effect. The court found that the presence of a general merger clause expressed the parties’ intent to operate solely under the 1995 Agreement and represented the entire understanding of the parties. Because it determined that no agreement to arbitrate existed after February 7, 1995, Supreme Court ruled that Wal-Mart could not now be deprived of its right to seek redress in a court of law. The Appellate Division affirmed, stating that it was "not imperative that the latest agreement expressly revoke the prior agreements’ arbitration provisions to effectively cancel those provisions” (227 AD2d 219, 220). We granted Primex leave to appeal, and now modify the Appellate Division’s order.
 

 The courts below correctly ruled that the issue of whether the claims in the Wal-Mart complaint are arbitrable, i.e., whether there is a clear, unequivocal and extant agreement to arbitrate the claims, is for the court and not the arbitrator to determine (see,
 
 Sisters of St. John the Baptist v Geraghty Constructor,
 
 67 NY2d 997, 998;
 
 Matter of Schlaifer v Sedlow,
 
 51 NY2d 181, 184). Because the 1995 Agreement between the parties did not contain an arbitration clause in its final form, those courts also correctly held that, insofar as Wal-Mart’s causes of action arise out of Primex’s performance of that Agreement, its petition to compel arbitration of such claims should be denied. We, however, disagree with the courts below as to the arbitrability of the claims in Wal-Mart’s complaint arising out of the 1990 and 1993 Agreements.
 

 Generally, a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes
 
 *599
 
 arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder, irrespective of whether the termination and discharge resulted from the natural expiration of the term of the agreement
 
 (Nolde Bros. v Bakery
 
 Workers, 430 US 243, 251-253), a unilateral termination under a notice of cancellation provision
 
 (Hamilton & Co. v American Home Assur. Co.,
 
 21 AD2d 500, 503,
 
 affd
 
 15 NY2d 595) or the breach of the agreement by one of the parties
 
 (Matter of Terminal Auxiliar Maritima [Winkler Credit Corp.],
 
 6 NY2d 294, 298;
 
 see also, Litton Fin. Print. Div. v National Labor Relations Bd.,
 
 501 US 190, 205-206). Thus, although both the 1990 and 1993 contracts have expired, the broad arbitration clauses contained in them would be enforceable as to the allegations in the Wal-Mart complaint pertaining to the acts of Primex during the terms of the 1990 and 1993 Agreements — all of which arise out of the procurement of merchandise by Primex as Wal-Mart’s agent under those Agreements. It follows that Primex’s petition to compel arbitration of those claims should prevail unless, as the courts below held, the merger clause of the 1995 Agreement superseded the 1990 and 1993 contractual obligations of the parties to submit disputes arising under those Agreements to arbitration.
 

 We conclude that the language of the merger clause was insufficient to establish any intent of the parties to revoke retroactively their contractual obligations to submit disputes arising thereunder to arbitration. Thus, we modify the order of the Appellate Division and remit to Supreme Court to determine which of Wal-Mart’s claims in the Arkansas suit arise out of the 1990 and 1993 Agreements and, therefore, are arbitrable, and to grant the appropriate relief in accordance with that determination.
 

 Courts and commentators addressing the substantive and procedural aspects of New York commercial litigation agree that the purpose of a general merger provision, typically containing the language found in the clause of the parties’ 1995 Agreement that it "represents the entire understanding between the parties,” is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing
 
 (see, Citibank v Plapinger,
 
 66 NY2d 90, 94-95;
 
 Judnick Realty Corp. v 32 W. 32nd St. Corp.,
 
 61 NY2d 819, 822; S. Kaye, The Parol Evidence Rule Generally, in 3 Commercial Litigation in New York State Courts § 36.3, at 390, n 82 [Haig,
 
 et al.,
 
 eds 1995]). The merger clause accomplishes this objective by establishing
 
 *600
 
 the parties’ intent that the Agreement is to be considered a completely integrated writing
 
 (see, Fogelson v Rackfay Constr. Co.,
 
 300 NY 334, 340,
 
 rearg denied
 
 301 NY 552; Restatement [Second] of Contacts § 216, comment
 
 c;
 
 3 Corbin, Contracts § 578, at 411; 2 Farnsworth, Contracts § 7.3, at 205). A completely integrated contract precludes extrinsic proof to add to or vary its terms
 
 (W.W.W. Assocs. v Giancontieri,
 
 77 NY2d 157, 162).
 

 It is readily demonstrable that enforcement of the parties’ obligations to arbitrate disputes arising out of their 1990 and 1993 Agreements does not implicate the parol evidence rule in connection with the 1995 Agreement and, hence, is not precluded by the merger clause in that writing. As we have already described, the parties omitted from the 1995 Agreement any duty to submit disputes arising thereunder to arbitration. Thus, they evidenced their intent to permit either of them to resort to the courts for the adjudication of claims originating out of their 1995 contractual obligations. As we have already ruled in this case, each party still remains free to seek judicial relief for claims against the other arising out of the 1995 Agreement, just as Wal-Mart has done in its Arkansas action, despite enforcement of the arbitration clauses as to disputes under the 1990 and 1993 Agreements.
 

 Once it has been, thus, established that an antecedent agreement has no effect to vary, contradict or supplement the terms of a later agreement containing the general merger clause, the prior agreement remains enforceable. Thus, in
 
 Champlin Ref. Co. v Gasoline Prods. Co.
 
 (29 F2d 331), which involved an oral agreement regarding plant construction and a written licensing agreement to use a patented oil-refining process containing a merger clause, the court permitted introduction of evidence of the breach of the oral agreement to establish a counterclaim to a suit on the licensing agreement:
 

 "[W]e can give no such broad construction to this [merger] paragraph as to apply it to matters extrinsic the license contract. This paragraph is intended to buttress rights accruing under the royalty contract — to cut off defenses otherwise open. But no defense to claims under this contract is now made; it is admitted that plaintiff is entitled to recover every dollar it claims. The issue here is solely as to defendant’s right to counterclaim for damages suffered under another contract. The fact
 
 *601
 
 that this other contract relates to what is, in important aspects, the same transaction, does not extend this [merger] paragraph to the destruction of that other contract. Its effect is limited to the contract sued upon.”
 
 (Id,.,
 
 at 337.)
 

 (See also, Gem Corrugated Box Corp. v National Kraft Container Corp.,
 
 427 F2d 499, 503 [2d Cir] [''Indeed, it would appear that the parol evidence rule simply has no application in these circumstances; the oral agreement does not serve to vary or modify the engagement of the parties with respect to the terms of purchase of box materials”];
 
 Traders’ Natl. Bank v Laskin,
 
 238 NY 535, 540-541;
 
 Frohman Amusement Corp. v Blinkhorn,
 
 178 App Div 431, 434; 3 Corbin,
 
 op. cit.,
 
 § 594, at 564-565).
 

 Applying the foregoing principles to this case, because the antecedent Agreements to arbitrate disputes thereunder unquestionably will have no effect of varying or adding to the terms of the 1995 Agreement, the mutual purpose of the parties in including the merger clause in the latter Agreement has been fulfilled and upheld, without frustrating their corresponding mutual purpose in agreeing to arbitrate disputes arising under their earlier Agreements.
 

 Finally, we reject Wal-Mart’s contention that, because the completely integrated 1995 Agreement may have signified the termination of application of the substantive provisions of the earlier Agreements
 
 (see,
 
 Restatement [Second] of Contracts § 213 [2]), it necessarily also terminated application of their obligations to arbitrate disputes arising under the former Agreements. Notwithstanding that a contract merger clause may be considered the equivalent of a general release of substantive claims under a prior Agreement, as Wal-Mart’s argument suggests
 
 (see,
 
 3 Corbin,
 
 op. cit.,
 
 § 578, at 404), we have already held, that, absent a more specific indication of intent to abandon contractual rights to an arbitration forum, a general release terminating the substantive rights of the parties to the contract will not nullify their obligation to submit to an arbitrator all of the disputes relating to that contract and its termination
 
 (see, Matter of Schlaifer v Sedlow,
 
 51 NY2d 181, 184-185,
 
 supra; cf., Matter of Minkin
 
 [Halperin], 279 App Div 226, 227 [parties stipulated that the prior agreement " 'is hereby canceled and declared of no further force or effect, and said agreement shall be interpreted
 
 as though it had never been
 
 executed’ ” (emphasis supplied)],
 
 affd
 
 304 NY 617).
 

 Moreover, as we have previously shown, the prevailing general rule of both New York and Federal common law of
 
 *602
 
 contracts is that, absent a clear manifestation of contrary intent, it is presumed that the parties intended that the arbitration forum for dispute resolution provided in an agreement will survive termination of the agreement as to subsequent disputes
 
 arising thereunder,
 
 whether its cessation was the result of the expiration of its term, exercise of a unilateral termination option, or breach
 
 (see, Nolde Bros. v Bakery Workers,
 
 supra;
 
 Hamilton & Co. v American Home Assur. Co., supra; Matter of Terminal Auxiliar Maritima [Winkler Credit Corp.], supra).
 
 There is no good reason, then, why that same principle should not apply as to arbitration of disputes arising out of an antecedent contract, when termination of that contract is attributable to a general merger clause in a subsequent agreement.
 

 And, of course, Wal-Mart’s reliance on the merger clause in the 1995 Agreement as a termination of any enforcement of rights (including arbitration) under the earlier Agreements of the parties is undercut by its Arkansas suit for a breach of those Agreements. As Judge Fuld stated in rejecting a similar attempt to avoid arbitration in
 
 Matter of Terminal Auxiliar Maritima (Winkler Credit
 
 Corp.): "[i]n point of fact, the appellant does not regard the contract as having been 'cancelled’ in any real sense, since it is actually suing for its breach in the action now stayed. If the contract had been so 'cancelled,’ then neither party would have a claim under it, and [appellant’s] lawsuit would be ripe for dismissal” (6 NY2d, at 298,
 
 supra).
 
 Accordingly, the petition to compel arbitration should be granted, insofar as it seeks such relief with respect to the claims in Wal-Mart’s complaint in the Arkansas suit arising out of the 1990 and 1993 Agreements of the parties.
 

 The order of the Appellate Division should be modified, without costs, by remitting to Supreme Court, New York County, for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order modified, etc.