### THE VERMONT TEDDY BEAR CO., INC., Plaintiff,

v.

### TYCO INDUSTRIES, INC., Defendant.

Tyco Industries, Inc., Counter-claimant,

v.

The Vermont Teddy Bear Co., Inc., Counter-defendant.

No. 98–CV–1133(LEK).

United States District Court, N.D. New York.

Jan. 10, 2000.

Neil L. Levine, Whiteman, Osterman Law Firm, Robert Ruslander, Ainsworth, Sullivan Law Firm, Albany, NY, for Vermont Teddy Bear Co., Inc.

David R. Sheridan, Bond, Schoeneck Law Firm, Albany, NY, for Tyco Industries, Inc.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

This is a diversity action in which Plaintiff alleges breach of a license agreement, and now comes before the Court seeking summary judgment. For the reasons set forth below, Plaintiff's motion is denied.

### I. BACKGROUND

Plaintiff is a manufacturer and national marketer of teddy bears, which are marketed under several names, including "Vermont Teddy Bear" and related trade names. Defendant manufactures and markets a wide variety of toys.

Through an intermediary, Plaintiff and Defendant entered into negotiations for Defendant to obtain a license to market products under Plaintiff's name. These negotiations resulted in a letter of intent dated May 5, 1995 ("Letter of Intent"), then a written license agreement dated September 11, 1995 ("License Agreement") that granted Defendant a license to use Plaintiff's trade name for the manufacture and marketing of certain products listed in attached schedules. The License Agreement provided for a 3½ year term, running from July 15, 1995 to December 31, 1998.

In exchange for the license, Defendant was to pay Plaintiff a royalty consisting of a percentage of Defendant's net sales of products sold under Plaintiff's name. Section 2(a) and Schedule E of the License Agreement set a rate of 5% of net sales in 1996 and 6% of net sales in 1997 and 1998. In addition Section 2(b) provides:

> *Minimum Royalties.* Licensee agrees to pay Licensor a minimum royalty consisting of an advance payment to be applied a minimum guarantee in the initial term thereof and in any renewal term hereunder, in the amounts specified in Schedule F. No part of any such minimum royalty shall in any event be repayable to Licensee. Royalty payments which exceed the initial term's minimum royalty or any renewal term's minimum royalty shall not be credited toward the next succeeding term's minimum royalty.

Plaintiff contends that Defendant made the following three annual guarantees: $100,000 for 1996, $125,000 for 1997, and $175,000 for 1998. Defendant contends that it did not agree to three annual guarantees, but rather consented to a $100,000 guarantee that would have been increased if Defendant had marketed new categories of products listed in Schedule F in the second and third year of the deal, which it did not do.

Plaintiff asserts one cause of action, seeking $125,000 for the second year and $175,000 for the third year of the License Agreement, for a total of $300,000, as well as interest and attorneys' fees. Defendant contends that it paid the promised guarantee and notified Plaintiff that it would not be marketing new categories of products in the second and third year, and therefore owes no additional money.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the nonmoving party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "but must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Summary judgment is usually unwarranted when the defendant's state of mind is at issue. *Clements v. Nassau County*, 835 F.2d 1000, 1005 (2d Cir.1987). In order to raise a fact issue regarding state of mind, however, there must be solid circumstantial evidence to prove plaintiff's case. *Id.* "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).

## B. Breach of Contract

■ The integration clause at Section 25 limits this Court's inquiry to the four corners of the License Agreement, which expressly supersedes "any and all prior contemporaneous agreements and understandings relating to it." Plaintiff's reliance on the Letter of Intent to modify or supplement the terms of the License Agreement is consequently misplaced. *See Primex Int'l Corp. v. Wal–Mart Stores, Inc.*, 89 N.Y.2d 594, 657 N.Y.S.2d 385, 679 N.E.2d 624 (1997) (merger clause prohibits parole evidence to modify or contradict the express terms of the agreement). The Letter of Intent, and other parol evidence, can be used to interpret ambiguities in the License Agreement: "the evidence is not considered to vary or contradict the terms of [the] integrated agreement; rather, the parol is used to determine what the terms of the agreement are." *See Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988)

■ The License Agreement is unclear with respect to the existence of any conditions precedent to the annual royalty payments. Schedule F merely states a minimum guarantee for 1996 and the corresponding increase for the latter two years of the agreement. Defendant stresses that "guarantee" throughout the License Agreement is singular and not plural, arguing that any increase was contingent on Defendant's approval of the introduction of the new product categories. But no where is Defendant's approval of the introduction of new products linked to the guarantee or related increases. The License Agreement clearly establishes Defendant's right not to proceed with the product introductions, but remains woefully ambiguous with respect to the link to any royalty payments. It is perfectly possible that Defendant agreed to the annual guaranteed payments and assumed the risk that it might not actually market additional products under the License Agreement. Unfortunately, the License Agreement also makes it perfectly possible that Plaintiff was guaranteed only the first $100,000, not any subsequent increases. Section 2(b) merely governs payment of the first year's advance and the prohibits application of any renewal term's royalty toward the next year's minimum royalty; it does *not* establish that those payments must necessarily be made.

The interpretation of the Letter of Intent invoked by both sides, as well as the affidavit explaining the negotiations from Eugene Murtha, Defendant's vice president for marketing during the relevant period, walks a fine line between interpretation and modification of the License Agreement. The Letter of Intent states that "[i]f introduction is agreed upon, the guarantee is creased to $125,000 payable by December 31, 1997" and the same contingency governs the 1998 increase to $175,000. The Letter of Intent therefore clearly contains the condition precedent for which Defendant argues, but that does not clarify the significance of the omission of that contingency from the final contract. Murtha's and Burns' explanations are plausible, but summary judgment requires undisputed fact, not plausibility. That does not exist here.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiff's motion for summary judgment is DENIED; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.