**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

—————————————

No. 02-50400

(Summary Calendar)

—————————————

GOSS-REID & ASSOCIATES INC; TRACY GOSS; SHEILA
REID,

Plaintiffs - Appellees,

versus

TEKNIKO LICENSING CORPORATION; ET AL,

Defendants,

TEKNIKO LICENSING CORPORATION; LANDMARK
EDUCATION CORPORATION,

Defendants - Appellants.

—————————————————————————————————

Appeal from the United States District Court
For the Western District of Texas
No. A-01-CV-525-SS

—————————————————————————————————

October 28, 2002

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Defendants Tekniko Licensing Corporation and Landmark Education Corporation ("Defendants") appeal from the district court's denial of their motion to compel arbitration. Defendants argue that the district court erred in concluding that a 1991 agreement between a purported predecessor-in-interest of defendant Tekniko Licensing Corporation ("Tekniko Licensing") and plaintiffs Goss-Reid & Associates, Inc., Tracy Goss, and Sheila Reid ("Plaintiffs") extinguished arbitration provisions contained in two prior agreements between Plaintiffs and other purported predecessors-in-interest of Tekniko Licensing. We affirm.

This appeal arises out of a dispute over the use and ownership of "The Winning Strategy," a consulting services "technology." For present purposes, however, we focus on a series of agreements between Plaintiffs and the apparent predecessors-in-interest of defendant Tekniko Licensing. Transformational Technologies, Inc. ("TTI") and the Rittenhaus-Tate Organization, a business owned by plaintiffs Tracy Goss and Sheila Reid, entered into a Franchise Agreement under which Goss and Reid became licensed franchisees of TTI and were given the use of certain TTI intellectual property.[1] Goss and Reid subsequently developed "The Winning Strategy" during the term of the Franchise Agreement. Plaintiffs and Tekniko, Inc., the apparent successor-in-interest of TTI, entered into a License Agreement, which gave Plaintiffs a non-exclusive license to use the same intellectual property covered by the Franchise Agreement. Both agreements contained mandatory

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Defendants argue that the Franchise Agreement was voluntarily terminated in 1990. However, the document cited in support of this contention does not purport to terminate the Franchise Agreement, but rather a license agreement between the Plaintiffs and TTI dated July 17, 1985.

-2-

arbitration provisions. Plaintiffs and Tekniko, Inc. then entered into a third agreement ("the Transfer Agreement"), which permanently transferred to Plaintiffs the non-exclusive right to use the intellectual property that was the subject of the prior agreements in exchange for a percentage of Plaintiffs' adjusted gross profits for that year. The Transfer Agreement stated that it "constitute[s] an amendment to the License Agreement . . . between you and this company ("TEKNIKO"), supersedes all prior agreements between you and TEKNIKO and, except as provided below, will terminate your rights and obligations and those of TEKNIKO under the License Agreement." The Transfer Agreement did not contain an arbitration provision, nor did it refer to or adopt the arbitration provisions contained in either the License Agreement or the Franchise Agreement. The Transfer Agreement did contain a choice of law provision stating that New York law would govern the interpretation of the agreement.

Plaintiffs filed suit alleging improper use of "The Winning Strategy" by the Defendants. Defendants asserted ownership of "The Winning Strategy" based on the Franchise Agreement. Defendants also moved to dismiss or to transfer venue and moved to compel arbitration on the basis of the Franchise and License Agreements.[2] The district court denied both motions. In regard to the motion to compel arbitration, the district court found that, under New York law, the Transfer Agreement constituted a novation and extinguished the arbitration provisions of the previous agreements. Defendants moved for reconsideration, which was denied. Defendants now appeal.

"We review the grant or denial of a motion to compel arbitration *de novo*." *Webb v.*

---

[2] Defendants contend that they are the successors-in-interest of TTI and Tekniko, Inc. and therefore retain the right to enforce the arbitration provisions of the Franchise and License Agreements. Like the district court, we decline to resolve this issue because it is irrelevant due to the unenforceability of the arbitration provisions.

*Investacorp., Inc.*, 89 F.3d 252, 257 (5th Cir. 1996). "In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002); *see also Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so . . . ."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967) ("[T]he purpose of Congress in [enacting the FAA] was to make arbitration agreements as enforceable as other contracts, not more so."). "This determination is generally made on the basis of 'ordinary state law principles that govern the formation of contracts.'" *Fleetwood Enters.*, 280 F.3d at 1073 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the issue is whether the arbitration provisions of the Franchise and License Agreements were superseded by the Transfer Agreement. Thus, the question before us is one of contractual interpretation.

The parties agree that New York law governs the interpretation of the Transfer Agreement. Under New York law, a court construing a contract should strive to give effect to the intentions of the parties as expressed in the terms of the contract. *See Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 717 (N.Y. 1995) ("It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed."); *Elletson v. Bonded Insulation Co. Inc.*, 708 N.Y.S.2d 511, 513 (N.Y. App. Div. 2000) ("It is well settled that where parties express their intent in a clear and complete contract, the writing must be enforced according to its terms.").[3] The Transfer Agreement states that it "supersedes all prior agreements" between

---

[3] The Defendants contend that an arbitrator, not a court, must decide whether this dispute is subject to arbitration. Absent an agreement between the parties to that effect, however, the matter was properly resolved by the district court. *See AT&T Tech., Inc. v. Communications Workers*, 475

Plaintiffs and the predecessor-in-interest of defendant Tekniko Licensing. This type of agreement clearly constitutes a novation under New York law. In *Citigifts, Inc. v. Pechnik*, 492 N.Y.S.2d 752, 753 (N.Y. App. Div. 1985), *aff'd*, 491 N.E.2d 1100 (N.Y. 1986), the parties entered into a contract which provided that "[t]his agreement supersedes any concurrent or previously signed documents." The court found that the agreement constituted a novation, which "[b]y its terms . . . superseded all prior or currently existing agreements between the parties." *Id.*; *cf. Polar Entm't Corp. v. Directors Guild of Am., Inc.*, 592 N.Y.S.2d 728, 728 (N.Y. App. Div. 1993) ("Notwithstanding the strong policy favoring arbitration of labor disputes, arbitration must be stayed where a prior agreement providing for arbitration has expired and the superseding agreement does not contain a clear agreement to arbitrate.").

Defendants rely extensively on *Primex International Corp. v. Wal-Mart Stores*, 679 N.E.2d 624 (N.Y. 1997), in which the New York Court of Appeals found that an arbitration clause survived both the expiration of the agreement and the formation of a new agreement between the parties without such a provision. The court's decision in *Primex* was based on a finding that the general merger clause in the new agreement, which stated that "[a]ll prior discussions, agreements, understandings or arrangements . . . are merged herein and this document represents the entire understanding between the parties," was not sufficiently specific to retroactively revoke the arbitration clause. *Id.* at 625, 628. Here, however, the Transfer Agreement specifically provides that it supersedes all prior agreements. Thus, the district court did not err in finding that there was no enforceable arbitration provision. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir.

U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

1990) ("When the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement.").

Defendants also point to the Plaintiffs' actions and to subsequent agreements between the parties as evidence that the Transfer Agreement was not intended to extinguish the Franchise and License Agreements. The district court correctly refused to consider this evidence. Where, as here, a written agreement is unambiguous on its face, extrinsic and parol evidence will not be considered. *See W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("It is well settled that 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'") (quoting *Intercontinental Planning v. Daystrom, Inc.*, 248 N.E.2d 576, 580 (N.Y. 1969)). The only potential ambiguity raised by the Defendants is that the Transfer Agreement refers to itself as an "amendment to the License Agreement." Read as a whole, however, the Transfer Agreement plainly manifests an intention to supersede all prior agreements between the parties and, except as specifically provided, to terminate all rights and obligations under the License Agreement. *See Rentways, Inc. v. O'Neill Milk & Cream Co.*, 126 N.E.2d 271, 273 (N.Y. 1955) ("A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract."). Thus, the district court correctly excluded the extrinsic evidence.

AFFIRMED.