■ REMCO MAINTENANCE, LLC, Appellant, v CC MANAGEMENT & CONSULTING, INC., et al., Respondents. [925 NYS2d 30]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered on or about March 18, 2010, which denied petitioner's motion to stay arbitration, unanimously affirmed, without costs.

By a consulting agreement dated August 12, 2005, Remco Maintenance, LLC (Remco) retained CC Management & Consulting, Inc. (CC) as its consultant and principal sales representative. The term of the agreement was one year, automatically renewable for a further one-year term "[u]nless either party gives to the other written notice of cancellation at least sixty (60) days prior to the end of the term." The agreement contained a broad arbitration clause providing that "[a]ny controversy or claim arising out of this Agreement or any aspect of CC's relationship with [Remco] shall be adjudicated by arbitration" in accordance with the rules of the American Arbitration Association.

The agreement was extended, pursuant to its terms, for two more terms: September 1, 2006 through August 31, 2007 and September 1, 2007 through August 31, 2008. On November 7, 2007, Remco and CC entered into a supplemental letter agreement modifying certain commission and draw terms, with the agreement otherwise remaining "in full force and effect."

By letter dated June 10, 2008, Remco advised CC that it was terminating the consulting agreement as of August 31, 2008 (its expiration date), but that its intention was to work toward a revision of the agreement. On August 11, 2008, a second supplemental letter agreement was entered into among Remco, CC and Building Services Corporation of America (BSCA), the transferee of CC. The second supplemental agreement provided that "[a]ll of the terms of the aforesaid [a]greements are in full force and effect" and modified the consulting agreement by: (1) recognizing that as of August 1, 2008, CC had "transferred" the previous two agreements to BSCA (Seymour Cohen was president of both CC and BSCA and signed on behalf of both entities), and that Remco had consented to the transfer; (2) extending the draw provisions of the supplemental letter agreement from August 12, 2008 to December 31, 2008 and providing that they were equally applicable to BSCA; and (3) providing that "the terms of the aforesaid [a]greements as modified remain in full force and effect," binding CC and Remco for periods prior to August 1, 2008 and binding BSCA and Remco "from August 1, 2008 to December 31, 2008."

Although the second supplemental agreement provided that the relevant agreements had been "transferred" to BSCA, Remco apparently never did any business with nor made any payments to BSCA and continued to treat CC as the real party in interest under the consulting agreement.

On October 30, 2009, Remco served CC with the requisite 60-day notice of cancellation, thereby (according to CC), terminating the agreement as of December 31, 2009.

On November 18, 2009, CC filed a demand for arbitration seeking damages based on numerous alleged violations of the consulting agreement by Remco. CC alleged, inter alia, that Remco had given the "vast majority" of its construction industry leads to other salesmen, rather than to CC, its "principal sales representative"; that Remco had failed to provide complete, itemized and accurate information concerning various projects procured by CC for which CC was owed commissions and a share of additional profits; and that Remco had "drastically" reduced CC's draw twice during 2009, and had refused to pay any draw since August 28, 2009.

Remco moved to stay arbitration on the grounds that (a) the parties' agreement had expired on December 31, 2008, and thus there was no valid agreement to arbitrate CC's claims, and (b) CC was not entitled to arbitrate because it had assigned the consulting agreement to BSCA. Remco argued that the agreement, as amended, had lapsed pursuant to its terms on

December 31, 2008.* Remco thus took the position that the provisions of the second supplemental agreement had modified and supplanted section 12 of the consulting agreement pertaining to its term and renewal in 12-month intervals. Remco argued that, in any event, even if the agreement remained in effect, it had been assigned from CC to BSCA as of July 31, 2008. Remco noted that CC was not claiming entitlement to any monies from 2008 or prior to 2008.

In opposition, CC maintained that the parties' contractual relationship continued into 2009 and had not been terminated by the second supplemental agreement. According to CC, although the second supplemental agreement created a new term ending December 31, 2008, that new term remained subject to the consulting agreement, including the automatic one-year renewal provision set forth in section 12, by virtue of the savings provision in the second supplemental agreement that "the terms of the aforesaid [a]greements as modified remain in full force and effect." Thus, CC argued, Remco was required to send a new notice of termination within 60 days of the end of the December 31, 2008 renewal term (prior to November 1, 2008), and, since it did not, the consulting agreement as modified continued into 2009; CC therefore retained the right to arbitrate, even if the disputes arose in 2009.

The court denied the stay and directed arbitration, finding that "the one-year agreement automatically extended for another one-year period." The court reasoned that, absent a clear manifestation of contrary intent, a broad arbitration clause survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof, regardless of the reason for expiration of the term of the agreement, citing *Matter of Primex Intl. Corp. v Wal-Mart Stores* (89 NY2d 594 [1997]).

The parties on the appeal dispute whether the second supplemental agreement incorporated all terms of the prior agreements, including the automatic renewal provision, or whether the second supplemental agreement created a fixed termination date of December 31, 2008.

Remco maintains that this question is one of arbitrability and is therefore a threshold one for this Court. We disagree. Where parties have entered into an agreement containing a broad arbitration provision, "the question of whether the arbitration clause governs a particular aspect of the controversy, as well as

---

* Remco also argued that extrinsic evidence demonstrated that the parties believed that the agreement would terminate as of December 31, 2008.

the determination of the merits of the dispute, are matters within the exclusive province of the arbitrator" (*see De Shazo v Hirschler*, 282 AD2d 257, 258 [2001]).

In cases where the parties have adopted a broad arbitration clause, the Court of Appeals has made clear: "Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration." (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91, 96 [1975] [citation omitted]).

It is thus for the arbitrator to determine the duration of the parties' agreement and whether CC's claims accrued during the relevant contract term (*see Matter of Bill of Fare [King]*, 191 AD2d 344 [1993] [broad arbitration clause encompassed claims not only for commissions earned prior to termination, but also commissions that would have been earned absent wrongful termination. The respondent's right to "prospective damages is a matter of contract interpretation to be left to the arbitrator under a broad arbitration clause"]; *National R.R. Passenger Corp. v Boston & Maine Corp.*, 850 F2d 756, 758, 762 [DC Cir 1988] [clause providing that "(a)ny claim or controversy" between the parties concerning the "interpretation, application or implementation" of the agreement would be subject to arbitration encompassed claims concerning the duration of the contract; "(f)aced with a . . . broad( ) arbitration clause . . . (the court) will presume that disputes over the termination or expiration of the contract should be submitted to arbitration. Of course, this presumption also attaches where the arbitration clause is broader still, such as one requiring arbitration of any grievance affecting the mutual relations of the parties" [internal quotation marks and citation omitted]).

Remco also maintains that the clause is inapplicable because the dispute concerns commissions earned after the parties' agreement had been terminated. This argument must also be rejected. Even if the contract term expired—a point CC disputes—"[g]enerally, a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder, irrespective of whether the termination and discharge resulted from the natural expiration of the term of the agreement, a uni-

lateral termination under a notice of cancellation provision or the breach of the agreement by one of the parties" (*Matter of Primex Intl. Corp.*, 89 NY2d at 598-599 [citations omitted]; *see also H. M. Hamilton & Co. v American Home Assur. Co.*, 21 AD2d 500, 503 [1964], *affd* 15 NY2d 595 [1964] [termination of contract did not end right to arbitrate claims arising thereunder]).

Finally, we reject Remco's argument that CC has no standing to enforce the arbitration agreement. It appears that CC, not BSCA, was the real party in interest. To the extent necessary, BSCA can always be joined as a party to the arbitration. In any event, it is clear that Remco, the party resisting arbitration, agreed to submit claims to arbitration, regardless of whether it is CC or BSCA that was initially named on the demand for arbitration. Concur—Andrias, J.P., Saxe, Moskowitz, Richter and Manzanet-Daniels, JJ.