Shionogi Inc. v Andrx Labs, LLC (2020 NY Slip Op 05308)





Shionogi Inc. v Andrx Labs, LLC


2020 NY Slip Op 05308


Decided on October 01, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 01, 2020

Before: Kapnick, J.P., Gesmer, González, Scarpulla, JJ. 


Index No. 651663/2019 Appeal No. 11926-11926A Case No. 2019-05533, 2019-05534 

[*1]Shionogi Inc., Plaintiff-Appellant,
v
Andrx Labs, LLC, et al., Defendants-Respondents.


Pillsbury Winthrop Shaw Pittman LLP, New York (Edward Flanders of counsel), for appellant.
Goodwin Procter LLP, New York (Linnea Cipriano of counsel), and Goodwin Procter LLP, Boston, MA (David J. Zimmer of the bar of the Commonwealth of Massachusetts, admitted pro hac vice, of counsel), for respondents.



Orders, Supreme Court, New York County (Jennifer G. Schechter, J.), entered December 6 and 9, 2019, which, respectively, granted defendants' motion for partial summary judgment on the issue of plaintiff's claims for recovery of damages relating to defendants' cessation of sales of generic Fortamet and denied plaintiff's motion for partial summary judgment on the issue of its right to recover lost profits, unanimously affirmed, with costs.
Plaintiff failed to show an entitlement to judgment as a matter of law on its claims for lost profits. In particular, plaintiff failed to show that there were no issues of fact as to the applicability of Section 10.4 of the parties' Manufacturing and Supply Agreement (MSA), which on its face limits recovery of lost profits for inter-party claims. Plaintiff is also unsuccessful in attempting to base its argument on point headings, including the labeling of Section 10.4 as "consequential damages," because the MSA elsewhere specifically provides that point headings are "for convenience only and are not to be considered when interpreting the provisions of this Agreement" (see Bank of N. Y. Mellon Trust Co., N.A. v Merrill Lynch Capital Servs. Inc., 99 AD3d 626, 628 [1st Dept 2012]). Plaintiff's reliance on the principle of noscitur a sociis to interpret the term "loss of profits" is similarly unavailing. That doctrine provides that the meaning of a particular term in a clause must be read and considered in relation to the other words with which it is grouped. Here, the placement of the terms "loss of profits" and "consequential damages" as items in a list actually highlights that those terms mean different things, so the doctrine relied on by plaintiff is not applicable.
Plaintiff also cannot prevail by arguing that construing Section 10.4 as limiting its recovery of lost profits would be commercially unreasonable and leave it without a remedy. To the contrary, the MSA appears to provide an express remedy for shortfalls in defendants' production of Fortamet, in the form of a credit against future orders. Moreover, even Section 10.4 does not leave plaintiff without any remedy for the claim it makes here, because it permits recovery of lost profits caused by "willful misconduct," and, as defendants concede, plaintiff may also recover upon a showing of gross negligence.
The motion court also properly granted defendants' motion for partial summary judgment dismissing plaintiff's claims for lost profits based on defendants' discontinuance of the sale of generic Fortamet.
Plaintiff failed to point to cognizable evidence supporting the existence of a joint venture with defendants, which it posits as the basis of its claim for breach of fiduciary duty. While the record shows the existence of some elements of a joint venture, including profit-sharing, there is no evidence of any provision for loss-sharing. Plaintiff contends that there was no need to provide for loss-sharing, because "there was no reasonable expectation of losses" (Don v Singer, 92 AD3d 576, 577 [1st Dept 2012]). The parties clearly foresaw the possibility of loss, however, making provision for its allocation in the case of brand Fortamet sales, but made no such provision for generic Fortamet sales. Where, as here, losses are reasonably foreseeable, loss-sharing is an "indispensable" element of a joint venture (Matter of Steinbeck v Gerosa, 4 NY2d 302, 317 [1958], appeal dismissed 358 US 39 [1958]; accord Slabakis v Schik, 164 AD3d 454, 455 [1st Dept], lv denied 32 NY3d 912 [2018]). Hence, plaintiff's joint-venture arguments fail.
Plaintiff argues that the parties' course of performance should be considered to show that the parties understood the agreements as requiring defendants to continue selling generic Fortamet for so long as it was continuing to manufacture branded Fortamet for plaintiff. This argument fails on several levels. In the first place, the parties' agreements contain merger clauses and are completely integrated. Far from seeking to merely interpret the licensing agreement (for which purpose extrinsic evidence might be admissible to resolve ambiguity), plaintiff seeks to add to the licensing agreement by adding an affirmative obligation on the part of defendants to continue to sell generic Fortamet. Even assuming ambiguity, the merger clause would preclude resort to course of performance evidence to add an entirely new obligation to the contract (see Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 600 [1997]).
Plaintiff's reliance on UCC 2-202, which permits an integrated agreement to be "supplemented" by evidence of the parties' course of performance, is unavailing. Critically, it is doubtful that the UCC would apply to the licensing agreement because the licensing agreement is fundamentally an intellectual property licensing and transfer agreement, which only secondarily provides for splitting profits on potential generic Fortamet sales (see Architectronics, Inc. v Control Sys., Inc., 935 F Supp 425, 432 [SD NY 1996]). In any event, plaintiff points to nothing in the record which could establish some positive obligation on the part of defendants to continue to make and sell generic Fortamet. The fact that defendants did make and sell generic Fortamet for five years confirms their right to do so, but in no way proves they were required to do so.
Equally unavailing is plaintiff's reliance on the implied covenant of good faith and fair dealing, which cannot "create independent contractual rights" or otherwise serve as "a substitute for plaintiff's nonviable contract claims" (National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp., 25 AD3d 309, 310 [1st Dept], lv dismissed 7 NY3d 886 [2006]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 1, 2020