■ Diamond Castle Partners IV PRC, L.P., et al., Respondents, v IAC/InterActiveCorp, Appellant. [918 NYS2d 73]—

Plaintiffs are a group of private equity funds and related entities. In July 2006, plaintiffs submitted a proposal to purchase PRC, a wholly-owned subsidiary of defendant. Following due diligence, plaintiffs submitted a bid for PRC of approximately $286.5 million, which defendant accepted. In order to effect the transaction, plaintiffs formed Panther as an acquisition vehicle. On November 2, 2006, Panther, defendant and PRC entered into a purchase agreement providing for the transfer of all of defendant's outstanding interest in PRC to Panther. Plaintiffs merged Panther into PRC immediately following the closing. PRC filed for bankruptcy in January 2008, and plaintiffs' equity interest in PRC was extinguished by the plan of reorganization.

On August 20, 2008, plaintiffs commenced the instant suit alleging breaches of various representations, warranties and covenants in the purchase agreement and seeking indemnification under article X. Defendant moved to dismiss, asserting, inter alia, that the claims of plaintiffs, which were not signatories to the agreement, were barred by the "No Third-Party Beneficiaries" provision in the agreement.

The motion court correctly rejected defendant's claim that plaintiffs lack standing. Although not signatories to the purchase agreement, the agreement was plainly intended to give them enforceable rights. Section 10.2 of the purchase agreement expressly provides that defendant shall indemnify and hold harmless the buyer and its "Affiliates," defined to include plaintiffs, from and against any and all losses sustained due to breaches by defendant or PRC of the representations, warranties and covenants in the purchase agreement. The term "parties," though undefined, was used in various clauses in the

agreement to include nonsignatory affiliates of the buyer and seller. For example, the "Buyer Indemnified Parties" are granted rights under section 2.3, relating to claims against the purchase escrow, and section 7.3, relating to indemnification for certain tax obligations.

It is "elementary" that "clauses of a contract should be read together contextually in order to give them meaning" (*HSBC Bank USA v National Equity Corp.*, 279 AD2d 251, 253 [2001]). "[I]t is a cardinal rule of construction that a court adopt an interpretation that renders no portion of the contract meaningless" (*Matter of Wallace v 600 Partners Co.*, 205 AD2d 202, 206 [1994], *affd* 86 NY2d 543 [1995] [internal quotation marks and citation omitted]). The motion court properly construed the agreement as granting plaintiffs enforceable rights that were not extinguished by the "boilerplate 'no third-party beneficiaries' language" contained in section 11.7, which limited enforcement of the agreement to "parties." In light of the numerous contract provisions granting plaintiffs enforceable rights, it was reasonable to construe section 11.7 to exclude only persons who are neither signatories nor buyer or seller indemnified parties. This reading is supported by the plain language of section 11.7, which precludes claims by any person other than the "parties" and their respective successors and permitted assigns.

To construe the purchase agreement in the manner suggested by defendant would be to ignore the clear, specific provisions of the purchase agreement recognizing plaintiffs' rights under the agreement, which we decline to do (*see Board of Mgrs. of Alfred Condominium v Carol Mgt.*, 214 AD2d 380, 382 [1995], *lv dismissed* 87 NY2d 942 [1996] [contract's reference to unit owners as beneficiaries trumped general disclaimer of obligations to third parties in agreement between construction manager and sponsor]; *see also Amirsaleh v Board of Trade of the City of N.Y., Inc.*, 2008 WL 4182998, *5, 2008 Del Ch LEXIS 131, *16 [Del Ch 2008] [contract's "specific grant of benefits" afforded nonsignatories the right to sue to enforce the agreement, notwithstanding "a general provision disclaiming the existence of any third-party beneficiaries"]).* Further, it would leave plaintiffs without remedy since Panther, the contracting

---

* We recognize that a federal court in the Southern District of New York has suggested that the ability of a contracting party to bring suit on behalf of an injured indemnitee/third-party beneficiary, in a case where a contract, like the one herein, contains both an indemnification provision in favor of a third-party and a no third-party beneficiary clause, may preclude direct suit by the third-party beneficiary (*see Control Data Sys., Inc. v Computer Power Group, Ltd.*, 1998 WL 178775, 1998 US Dist LEXIS 5277 [SD NY 1998]). Nonetheless, even in that case, the District Court found that "practical considerations"

entity, was merely an acquisition vehicle which was merged into PRC immediately following the closing.

We have considered defendant's other arguments and find them unavailing. Concur—Andrias, J.P., Catterson, Moskowitz, Manzanet-Daniels and Román, JJ.

warranted joinder of the noncontracting third-party beneficiary in the action (1998 WL 178775, *3, 1998 US Dist LEXIS 5277, *7). In any event, the no third-party beneficiary clause in *Control Data Sys.* differed from the clause herein insofar as it applied to "any person not a signatory" (1998 WL 178775, *2, 1998 US Dist LEXIS 5277, *5). To the extent the opinion in *Control Data Sys.* may be construed as reaching a different conclusion from this Court's today, we respectfully disagree with the District Court's reasoning.