■ PETRA CRE CDO 2007-1, Ltd., Appellant, v Morgans Group LLC, Respondent. [923 NYS2d 487]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered December 29, 2010, which, inter alia, denied plaintiff mezzanine lender's motion for summary judgment on its complaint alleging breach of contract, and granted defendant guarantor's cross motion for summary judgment dismissing the complaint, unanimously affirmed, with costs.

A senior loan and mezzanine loan originated from a single $40 million loan arrangement between a nonparty senior lender (Greenwich Capital) and the defendant (Morgans), as parent negotiator on behalf of the eventual borrower-entities, MHG (as borrower on the senior loan) and Mondrian (as borrower on the mezzanine loan). The two loan agreements, together with supporting agreements, were executed on the same date. Pursuant to the express terms of the parties' commitment letter, the $40 million nonrecourse loan was split, at Greenwich Capital's discretion, into the senior loan and the subordinate mezzanine loan. An "Intercreditor Agreement" expressly called for the mezzanine loan's subordinate position to the senior loan. The express terms of the senior loan provided that it was secured by the mortgage on the MHG hotel property (property), and that Greenwich Capital, as senior lender, could foreclose on that property in the event of a default by MHG, including nonpayment, as occurred. The express terms of the mezzanine loan provided that it was secured by a pledge agreement to the collateral of MHG and Mondrian (i.e., a 100% interest in MHG

membership, related dividends and distributions). As a subordinated loan, the mezzanine loan interest in the property was equitable, to the extent there remained any excess value once full payment was made on the obligations owing on the senior loan. The mezzanine loan expressly referenced the senior loan, noting the senior loan's mortgage interest in the property.

Agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one (*see Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197 [1941]; *Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium*, 65 AD3d 985, 987 [2009]). Here, the clear language of the senior and mezzanine loans provided that the senior loan's mortgage on the property was a "Permitted Transfer," and that Greenwich Capital could foreclose against the property in the event of a default in payment by MHG, as occurred. A "Deed of Transfer" that was executed simultaneously with the senior loan also authorized a foreclosure sale of the property in the event of MHG's default in payment.

Plaintiff's argument, as mezzanine lender, that the mezzanine loan expressly allowed the senior lender to "create" a mortgage on the property, but fell short of authorizing "enforcement" of such mortgage terms, is refuted by a plain reading of the interrelated loan documents. Plaintiff's argument that it should nonetheless be allowed recourse against Morgans as guarantor of the mezzanine loan debt is refuted by the documents and the facts in the record. The mezzanine loan allowed for plaintiff to seek recourse against Morgans on the guaranty only in limited circumstances not applicable here (i.e., debtor's "bad acts," or the transfer of property that was not otherwise "Permitted" under the terms of the mezzanine loan agreement). The documentary evidence establishes that plaintiff's recovery for Mondrian's default on the mezzanine loan obligation was expressly limited to the collateral of the debtors, as well as any excess foreclosure sale proceeds from the property after the senior loan obligation was satisfied. Here, the foreclosure proceeds failed to fully satisfy the obligations owing on the senior loan. Such potential risk of either limited or nonrecovery by the mezzanine lender was expressly recognized by plaintiff in its own offering memorandum sent to potential investors.

Plaintiff's argument that the motion court improperly read into the loan agreements' mortgage language that a right of foreclosure was "subsumed" within the term "mortgage," is unavailing. The relevant documents expressly provided that the senior lender could foreclose in the event of an MHG default.

Similarly, plaintiff's argument that the mezzanine loan only specifically permitted the "creation" of a mortgage lien on the property, but not its "enforcement," is, as indicated, refuted by the express language of the interrelated lending documents. Concur—Andrias, J.P., Friedman, Freedman, Richter and Román, JJ.