13-950-cv
*T.M. Real Estate Holdings, LLC. v. The Stop & Shop Supermarket Company LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand thirteen.

PRESENT:

    BARRINGTON D. PARKER,
    PETER W. HALL,
    DEBRA ANN LIVINGSTON,

                    *Circuit Judges.*
_____

T.M. REAL ESTATE HOLDINGS, LLC,

                *Petitioner-Appellant,*

      -v.-                                     No. 13-950-cv

THE STOP & SHOP SUPERMARKET COMPANY LLC,

                *Respondent-Appellee.*
_____

ALBERT N. METZ (Herbert I. Deutsch, Christian V. Cangiano, *on the brief*), Deutsch, Metz & Deutsch, LLP, New York, NY, *for Petitioner-Appellant*.

JEFFREY L. NAGEL (Howard D. Geneslaw, *on the brief*), Gibbons P.C., New York, NY, *for Respondent-Appellee*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the District Court is **AFFIRMED.**

Petitioner-Appellant T.M. Real Estate Holdings ("TM") filed a breach of contract action against Defendant-Appellee The Stop & Shop Supermarket LLC ("Stop & Shop") in the United States District Court for the Southern District of New York on March 12, 2011. Defendant Stop & Shop moved to dismiss the complaint on May 9, 2011. In a decision dated February 14, 2013, the district court (McMahon, *J.*) granted Stop & Shop's motion to dismiss and entered judgment dismissing TM's complaint with prejudice on February 15, 2013. This appeal followed. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal.

\* \* \*

TM and Stop & Shop entered into a lease agreement on November 28, 2005. Over five years later, on January 31, 2011, Stop & Shop sent TM a letter terminating their lease agreement. Stop & Shop's termination was authorized, if at all, pursuant

2

to the first clause of section 2.3 of the lease (the "24-month clause") that provides: "In the event that all of the pre-conditions to the Commencement Date shall not have occurred and be subsisting as of the date which is twenty-four (24) months from the date of this lease, then Tenant shall have the right . . . at anytime thereafter . . . to cancel and terminate this lease." Because we agree that Stop & Shop was authorized to terminate the lease under this 24-month clause, we affirm.

The plain text of the 24-month clause, standing alone, has no outer limit. Yet, as the district court held and TM argues here, an interpretation that would give Stop & Shop the unfettered right to terminate the lease after 24 months, as long as the preconditions were not met, is highly disfavored because it would render the next two clauses, that provide for a more limited right to terminate, mere surplusage. *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) (an interpretation of a contract that has "the effect of rendering at least one clause superfluous or meaningless...is not preferred and will be avoided if possible").

We interpret a contract to "give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal citations and quotation marks omitted). A contract's clauses "should be read together contextually in order to give them meaning." *Diamond*

*Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 918 N.Y.S.2d 73, 73 (N.Y. App Div. 2012) (internal citations omitted). Following these rules of interpretation, the 24-month clause of section 2.3 is cabined by the second and third clauses following it. As the district court held, Stop & Shop's right to terminate the lease under the first 24-month clause remains operative until the second clause of section 2.3 becomes effective. The second clause, in turn, is operative until the third clause becomes effective. Reading the contract in this manner gives each sentence in Section 2.3, as amended, an independent function and meaning when considered within the contract as a whole.

The second clause of section 2.3[1] was not yet effective when Stop & Shop terminated the lease. Thus it was authorized to terminate under the first 24-month

---

[1]The second clause of section 2.3 as amended provides:

> In the event that (a) all of the pre-conditions to the Commencement Date shall not have occurred and be subsisting as of seven hundred thirty (730) days from the date that Tenant receives from Landlord written documentation evidencing that the City Planning Commission accepted the application for the Special User permit and a so-called Project # has been assigned evidencing the acceptance by the City Planning Commission of the application for the Special Use Permit (the "Cut-Off Date") or (b) intentionally omitted, then Tenant shall have the right, by written notice to Landlord given at any time within ninety (90) days after the Cut-Off date (provided that all of the pre-conditions to the Commencement Date shall not then have occurred and be subsisting), to either cancel and terminate this lease or to extend the Cut-Off Date to an additional three hundred sixty five (365) days from the Cut Off Date (the "Extended Cut-Off Date").

clause. TM argues that the second clause became effective when the tenant received notice from the landlord evidencing acceptance of the Special Use Permit application by the City Planning Commission ("Acceptance Date"). This is incorrect. The second clause does not become effective until "seven hundred thirty (730) days from the [Acceptance Date]." First, this comports with the plain text. The Acceptance Date is not a stand-alone date under the plain text of the clause – indeed it is not even a term defined in the contract, only in TM's litigation papers. Rather, the text is structured so that the 730 day waiting period is the key terminology defining the effective date of the second sentence, while the Acceptance Date is merely a reference point from which that waiting period begins. Second, the clause defines a "Cut-Off Date" from which Stop & Stop is given 90 days to make a decision. The natural reading of this clause, in harmony with the other clauses and amendments, is that it becomes operative at the Cut-Off Date, which occurs 730 days after the Acceptance Date. Third, this interpretation fits with the broad language in the 24-month clause. There is no indication or hint in the plain text of the contract that the undefined term now referred to as the Acceptance Date suspends any then-existing contractual right. Accordingly, adopting TM's interpretation would unduly restrict the termination right conferred by the 24-month clause through a constricted

reading of the agreement.  Because Stop & Shop terminated the lease more than 24 months after entering the lease and before 730 days had passed following the Acceptance Date, its termination was authorized by the first 24-month clause.

We have reviewed TM's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the District Court is **AFFIRMED.**

FOR T HE COURT:
Catherine O'Hagan Wolfe, Clerk

6