# Third District Court of Appeal

## State of Florida

Opinion filed July 12, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-104
Lower Tribunal No. 16-10167
_____

**Barry E. Mukamal,**
Appellant,

vs.

**Marcum LLP and Jeffrey Weiner,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Michael Hanzman, Judge.

Dorta Law and Gonzalo R. Dorta, for appellant.

Pathman Lewis, LLP and John A. Moore; Davidoff Hutcher & Citron, LLP and Larry Hutcher (New York, NY), for appellees.

Before LAGOA, SCALES and LUCK, JJ.

LUCK, J.

Barry E. Mukamal, a former partner at accounting firm Marcum LLP, sued his old firm and its managing partner for fraud. Mukamal appeals the trial court's

nonfinal order staying the case and compelling him to arbitrate his fraud claim as required by his partnership agreement (and the amendments to the partnership agreement). We have jurisdiction, Fla. R. App. P. 9.130(a)(3)(C)(iv),[1] and affirm.

*Factual Background and Procedural History*

Mukamal, from 1997 to 2009, was a partner at the now-defunct accounting firm of Rachlin LLP. Marcum LLP, in 2009, merged with the Rachlin accounting firm, and as part of the merger Mukamal became a partner at Marcum LLP. Marcum LLP had an existing partnership agreement with its partners from 2002. The Marcum LLP 2002 partnership agreement had this arbitration provision:

> Arbitration. Any and all controversies, disputes or claims arising out of or relating to any provision of this Agreement or the breach thereof shall, at the election of any party to the controversy, dispute or claim, be settled by final and binding arbitration in Nassau County by three arbitrators in accordance with the rules then in effect of the American Arbitration Association . . . .

When Mukamal joined the partnership in 2009, he signed three agreements with the Marcum LLP accounting firm. First, he agreed to be subject to, and bound by, all of the terms and conditions of the 2002 partnership agreement.

Second, Mukamal signed a special rider to the 2002 partnership agreement granting him certain rights in connection with the merger of the two accounting firms. The rider amended for Mukamal provisions in the 2002 partnership

---

[1] "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . the entitlement of a party to arbitration . . . ."

2

agreement regarding the distribution of shares in the merged company, how the merged company would be governed, his compensation, benefits, and what would happen if he was terminated or withdrew from the merged company. The rider also contained the following arbitration provision:

> Governing Law; Arbitration. This Rider and the interpretation of its terms will be governed by the laws of the State of New York without application of conflicts of law principles. The parties to this Rider will make their best efforts to resolve amicably, by mutual consultation, any dispute arising out of or in connection with this Rider. If such dispute cannot be resolved by mutual agreement, then such dispute will be finally resolved by arbitration pursuant to the provisions of Section 19.5 of the [2002 partnership agreement].

On the same day, Mukamal signed a third agreement, called an addendum to the special rider. The purpose of the addendum was to "amend certain provisions" of the rider, including those provisions allowing Mukamal to retire and further refining the decision-making structure of the merged company. The addendum, like the 2002 partnership agreement and the rider, had a governing law provision (New York law would govern), but, unlike the two other agreements, the addendum did not have an arbitration clause.

In 2012, according to his amended complaint for fraud, Mukamal learned the following about the merged company and its principals. Prior to the merger, Mukamal's old firm, Rachlin LLP, had made undisclosed payments to its marketing director, in-house counsel, and the head of the Florida office, adding up to more than five million dollars. After these undisclosed pre-merger payments

3

had been discovered, the Marcum LLP principals paid out an unapproved severance package to Rachlin LLP's former managing partner, and made the former Rachlin LLP partners pay for it.

After the merger, Mukamal learned that Marcum LLP's principals changed the way bonuses were calculated and distributed to hurt the partners in Miami (and help those in New York). Marcum LLP also did not disclose a secret bonus structure that would have benefited Mukamal had he known about it.

In July 2012, Mukamal presented his pre- and post-merger findings to the Marcum LLP executive committee. The committee, however, took no action. As a result, in April 2013, Mukamal gave his one year notice that he was resigning from the merged company.

In 2016, Mukamal filed two lawsuits. In one, this case, Mukamal sued Marcum LLP and its managing partner for fraud. In the other, Mukamal filed a statement of claim for arbitration against Marcum LLP alleging that the merged company breached the 2002 partnership agreement, rider, and addendum.[2]

The Marcum LLP defendants moved to compel arbitration on the fraud claim, and stay the case, because Mukamal's fraud arose out of the partnership

---

[2] The parties have not argued the legal implications of Mukamal, on the one hand, invoking the arbitration clauses in the 2002 partnership agreement and rider to litigate breach of contract disputes he has with Marcum LLP arising out of the three agreements, and, on the other hand, arguing in this court that the language of the addendum is an intent to cancel or abandon the right to arbitrate his fraud claim against Marcum LLP. For that reason, we too will not address this irony.

agreement, and, thus fell under the broad arbitration provisions contained in the 2002 partnership agreement and rider. Mukamal responded that: (1) his tort claim did not arise out of his various agreements with Marcum LLP; and (2) the absence of an arbitration clause in the addendum, which represented the parties' last writing on the matter, clearly indicated an intent to forgo arbitration.

The trial court, in a well-reasoned order, granted the Marcum LLP defendants' motion to stay and compel arbitration. The trial court concluded, first, that "the claim [was] arbitrable because every allegation in [Mukamal's] [a]mended [c]omplaint advance[d] a claim arising out of and related to the parties professional relationship." Mukamal does not appeal this conclusion, and we do not address it in this appeal. As to Mukamal's argument that the absence of an arbitration clause in the addendum indicated the parties' intent to forego arbitration, the trial court concluded that the addendum "did not eliminate the parties' arbitration agreement by 'implication.' . . . The [a]ddendum – executed on the same day – does not evince an intent to abandon the arbitration clause, something the parties could easily have accomplished if they desired (or intended) to do so." Mukamal has appealed the trial court's conclusion on this issue.

*Discussion*[3]

---

[3] "We review an order granting or denying a motion to compel arbitration de novo." Roth v. Cohen, 941 So. 2d 496, 499 (Fla. 3d DCA 2006).

5

Mukamal contends on appeal that the parties' decision to omit the arbitration clause from the addendum created an ambiguity as to the parties' intent to arbitrate disputes arising out of the three agreements. Under New York law,[4] Mukamal continues, the trial court erred in failing to hold an evidentiary hearing on the parties' ambiguous intent to arbitrate, where parole evidence would have been admitted.[5]

We disagree, for two reasons. First, under New York law, "[a]greements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one." PETRA CRE 2007-1 CDO, Ltd. v. Morgans Grp. LLC, 923 N.Y.S.2d 487, 488 (N.Y. App. Div. 2011) (citation omitted). We, therefore, read the rider and addendum, which were executed on the same day and pertain to the terms of Mukamal's employment with the merged accounting firm, together as one agreement.

The addendum, in its acknowledgements section, describes the rider as setting forth Mukamal's agreement with respect to certain rights to be granted by Marcum LLP to Mukamal in connection with the proposed merger. In the next recital, the addendum says that "[t]he parties have agreed to enter into this letter agreement in order to amend certain provisions" of the rider.

---

[4] The interpretation of the three agreements is governed by New York law.

[5] Mukamal proffers, for example, that earlier drafts of the addendum included the arbitration clause.

6

The "certain provisions" amended by the addendum were identified in section three, entitled "Amendments to Rider." The amendments were made to provisions in the rider related to employment benefits, retirement, and corporate governance. The rider's arbitration clause was not one of the provisions being amended; it was left untouched by the addendum. Reading the rider and addendum together, then, the arbitration clause applies to disputes arising out of both contemporaneous agreements.

The rider's language supports this reading. The rider provides that it "and any other contemporaneous documents entered into by the parties contain the sole and entire agreement among the parties with respect to their subject matter." In addition, the rider states that "[n]o amendment or modification" of its terms "will be valid unless in writing and duly executed by the . . . parties." These provisions show that the rider and addendum, executed on the same day, are the sole agreement between Mukamal and Marcum LLP, and the only way to alter the agreement is in a writing signed by the parties. Neither the addendum, nor any other agreement in the record, changed or modified the arbitration provision in the rider.

Even if the agreements are not read together, under New York law, a subsequent agreement cannot abandon or cancel an existing contractual right to arbitrate "absent a clear manifestation of contrary intent." <u>Primex Int'l Corp. v.</u>

Wal-Mart Stores, Inc., 679 N.E.2d 624, 628 (N.Y. 1997). Silence, in other words, is not an expression of intent to undo the right to arbitrate.

In Primex, for example, a company agreed to be Wal-Mart's exclusive buying agent for South American manufactured consumer goods in three successive three-year contracts. Primex, 679 N.E.2d at 625. The first contract had a New York choice of law provision, a broad arbitration clause, the right to opt out after six months, and the following merger clause:

> This Agreement may not be amended, changed, modified, or altered except by a writing signed by both parties. All prior discussions, agreements, understandings or arrangements, whether oral or written, are merged herein and this document represents the entire understanding between the parties.

Id. The second contract had the same provisions. Id. The third contract had the same provisions except that Wal-Mart's general counsel removed the arbitration clause. Id. After a kickback scandal involving the buying agent, Wal-Mart terminated the contract and sued the buying agent for fraud and breach of contract. Id. at 625-26. The buying agent moved to compel Wal-Mart to arbitrate the claims arising out of the two earlier contracts. Id. at 626.

The trial court denied the motion because "the presence of a general merger clause expressed the parties' intent to operate solely under the [third] [a]greement and represented the entire understanding of the parties." Id. The intermediate appellate court agreed that "it was 'not imperative that the latest agreement

8

expressly revoke the prior agreements' arbitration provisions to effectively cancel those provisions.'" Id. (quoting appellate division's order).

The New York Court of Appeals reversed, explaining that:

[A] broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder, irrespective of whether the termination and discharge resulted from the natural expiration of the term of the agreement, a unilateral termination under a notice of cancellation provision, or the breach of the agreement by one of the parties.

Id. (citations omitted). "[T]he merger clause," the court concluded, "was insufficient to establish any intent of the parties to revoke retroactively their contractual obligations to submit disputes arising thereunder to arbitration." Id. at 627. "[A]bsent a more specific indication of intent to abandon contractual rights to an arbitration forum," the court continued, "a general release terminating the substantive rights of the parties to the contract will not nullify their obligation to submit to an arbitrator all of the disputes relating to that contract and its termination." Id. at 628. There must be, the New York court said, "a clear manifestation of contrary intent." Id.

Likewise, in Gadelkareem v. Blackbook Capital LLC, 46 Misc. 3d 149 (N.Y. App. Term 2015), after a securities firm hired a broker, the broker "executed a Uniform Application for Securities Industry Registration or Transfer Form (Form U--4), which contained a broad arbitration clause requiring plaintiff 'to arbitrate

9

any dispute, claim or controversy that may arise' between the parties." Id. The New York intermediate appellate court rejected the broker's contention that "the New York choice of law and consent to jurisdiction provisions of the parties' [subsequent] employment contract" negated the earlier arbitration agreement because "significantly, [it] contained 'no express denial of the agreement to arbitrate.'" Id. (citations omitted).

In sum, standard merger and choice of law provisions in a subsequent contract are not the kinds of "clear manifestation" or "express denial" needed to abandon an earlier agreement to arbitrate. On the other hand, the examples the New York courts have given of sufficient "clear manifestation" or "express denial" language are telling. In Primex, the New York Court of Appeals quoted this language as a "specific indication of intent to abandon contractual rights to an arbitration forum": "the prior agreement is hereby canceled and declared of no further force or effect, and said agreement shall be interpreted as though it had never been executed." Primex, 679 N.E.2d at 628 (quotation omitted). And in Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522 (2d Cir. 2011), although the parties agreed to arbitrate any disputes as part of a preliminary letter agreement, the subsequent placement agreement provided that "[a]ny dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York."

Id. at 523.[6]  The language in the placement agreement, the federal appellate court said, stood in "direct conflict" with the letter agreement, and "specifically preclude" arbitration.  Id. at 525.

Here, Mukamal contends that the choice of law provision in the addendum ("This letter agreement and the interpretation of its terms shall be governed by the laws of the State of New York without application of conflicts of law principles.") expressed an intent not to arbitrate, but this is not enough of a clear manifestation or express denial to abandon the clear right to arbitrate in the earlier 2002 partnership agreement and rider.  In other words, general language in a subsequent agreement, like what is in the addendum, is insufficient to negate the parties' earlier agreement to arbitrate.  The addendum's choice of law provision does not dictate the forum the parties must litigate in; it only provides that New York law shall be applied in the parties' chosen forum.  The forum for litigation is not addressed in the addendum and, therefore, nothing in it directly conflicts or specifically precludes the contractual right to arbitrate in the two earlier agreements.  As in Primex and Gadelkareem, the contractual right to arbitrate in the 2002 partnership agreement and rider is unaffected by, and survives, the subsequent addendum to the rider for any disputes that arise out of the two earlier agreements.

_____

[6] The federal Second Circuit Court of Appeals, as we do here, was applying New York law.

11

*Conclusion*

For these reasons, the trial court properly granted the Marcum LLP defendants' motion to compel arbitration and stay the case. We, therefore, affirm.

Affirmed.