MPEG LA, LLC v Samsung Elecs. Co., Ltd. (2018 NY Slip Op 06147)





MPEG LA, LLC v Samsung Elecs. Co., Ltd.


2018 NY Slip Op 06147


Decided on September 20, 2018


Appellate Division, First Department


Singh, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 20, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Judith J. Gische
Marcy L. Kahn
Anil C. Singh
Peter H. Moulton, JJ.


654454/15 

[*1]MPEG LA, LLC, Plaintiff-Respondent,
v
Samsung Electronics Co., Ltd., Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court,
New York County (Shirley Werner Kornreich, J.), entered January 16, 2018, in favor of plaintiff in the total sum of $115,121,061.63 and from orders of the same court and Justice, entered on or about November 28, 2016, on or about May 4, 2017, and August 25, 2017.




Quinn Emanuel Urquhart & Sullivan, LLP, New York (Kathleen M. Sullivan, Michael B. Carlinsky, William B. Adams and Cleland B. Welton II of counsel), and Reed Smith, LLP, New York (Louis M. Solomon of counsel), for appellant.
Windels Marx Lane & Mittendorf, LLP, New York (Craig P. Murphy, John D. Holden, Philip M. Taylor and Michaels M. Harary of counsel), for respondent.



SINGH, J.


The primary issue on this appeal is whether defendant, Samsung Electronics Co., Ltd., could terminate the Agreement Among Licensors (AAL) and Patent Portfolio License (PPL) in October 2015. We find that defendant's unilateral termination of the AAL and the PPL was [*2]proper under the plain language of both agreements.
Defendant is one of several parties to four related contracts governing the licensing of a pool of patents necessary to the manufacture of consumer electronic products practicing the Advanced Television Systems Committee (ATSC) Standard for digital television transmissions. As an owner of some patents included in the pool, defendant is both a licensor and a licensee. Plaintiff, MPEG LA, LLC, is the ATSC patent pool's licensing administrator. The ATSC patent pool is governed by four agreements executed virtually simultaneously in September 2007.
The AAL is an agreement among the owners of the patents in the ATSC patent pool, including defendant. Plaintiff is not a signatory to the AAL. However, the AAL provides for the selection of plaintiff as licensing administrator, describes plaintiff's duties, requires that the parties enter into a separate licensing administrator agreement with plaintiff, and requires that each party grant plaintiff a license that allows it to grant sublicenses.
Section 10.8 of the AAL provides that it shall not "give rise to any obligation on any Party hereto for the benefit of a third party or . . . confer any rights on any third party." "Party" is defined to include any entity that signs the "Agreement," which is, in turn, defined as the AAL, including any attachments or exhibits thereto. A sample licensing administrator agreement and license are attached to the AAL, but not the final, executed versions.
The license from licensor to licensing administrator is the license issued by defendant to plaintiff in accordance with AAL § 2.3. The Licensing Administrator Agreement (LAA) is an agreement between plaintiff and the patent owners, including defendant, that governs plaintiff's role as licensing administrator. The PPL is the sublicense granted by plaintiff to all licensees, including defendant, that dictates the royalties they must pay to plaintiff to use the patents in the patent pool.
On October 5, 2015, defendant sent two termination notices to plaintiff, both of which were effective November 4, 2015. The first notice purported to terminate the PPL pursuant to § 6.4 thereof. The second purported to terminate, pursuant to § 7.2 of the AAL, the AAL, the right of the licensing administrator to grant additional sublicenses pursuant to § 2.3 of the AAL, and the LAA. Plaintiff refused to accept defendant's termination notices.
On December 30, 2015, plaintiff initiated this suit, seeking damages for breach of contract, as well as a judgment declaring that "Samsung has a continuing obligation to comply with its obligations under the Samsung ATSC Agreements until at least January 1, 2017." Defendant asserted several affirmative defenses, as well as counterclaims for fraudulent inducement, negligent misrepresentation, and a judgment declaring that the October 2015 terminations were effective.
On March 15, 2016, defendant moved to dismiss the complaint on the ground that it had properly terminated the AAL and PPL in October 2015. Plaintiff opposed, and cross-moved for summary judgment on liability, arguing that the October 2015 attempted terminations were ineffective because the AAL could not properly be terminated before 2017 and defendant was required to pay certain royalties within 30 days of termination of the PPL, which it did not do. Both parties argued that the text of the agreements was unambiguous, and did not submit any extrinsic evidence.
Supreme Court denied defendant's motion to dismiss the complaint and granted plaintiff's cross motion for partial summary judgment. The court rejected defendant's "partial termination" argument, and held that "section 7.2.1 of the AAL only permits Samsung to voluntarily terminate the AAL if Samsung also terminates the LAA," which could not be voluntarily terminated before 2017. The court further held that the PPL was not properly terminated because the AAL prohibited termination of the PPL as long as defendant remained a member of the patent pool. The court reasoned that defendant could not voluntarily terminate the AAL before January 1, 2017 unless the LAA was terminated on another enumerated ground, [*3]including termination under section 11.3 of the LAA, and that since the LAA was not terminated, defendant's October 5, 2015 termination of the AAL was ineffective.
After an audit, judgment was entered against defendant in the amount of $115,121,061.63. We now reverse.
I.
As a preliminary matter, we reject defendant's contention that plaintiff does not have standing to sue for breach of the AAL because it is not a party to that agreement. Plaintiff is an intended third-party beneficiary of the AAL, as that agreement explicitly refers to plaintiff and grants it enforceable rights. Accordingly, the AAL's boilerplate exclusion of third-party beneficiaries does not apply to plaintiff, and this action may not be properly dismissed for lack of standing (Diamond Castle Partners IV PRC, L.P. v IAC/InterActiveCorp, 82 AD3d 421, 422 [1st Dept 2011]). In addition, we note that the dispute between the parties concerns defendant's failure to pay royalties under the PPL. Plaintiff is a party to the PPL with the power to enforce defendant's royalty obligations. II.
We now turn to whether defendant could unilaterally terminate the AAL before 2017.
When engaging in contract interpretation, "the standard of review is for this Court to examine the contract's language de novo" (Duane Reade, Inc. v Cardtronics, LP, 54 AD3d 137, 140 [1st Dept 2008]; see also Quattro Parent LLC v Zaki, 160 AD3d 478, 478 [1st Dept 2018]). When the parties have a dispute over the meaning, the court first asks if the contract contains any ambiguity, which is a legal matter for the court to decide (Ashwood Capital, Inc. v OTG Mgt., Inc., 99 AD3d 1, 7-8 [1st Dept 2012]). Whether there is an ambiguity "is determined by looking within the four corners of the document, not to outside sources" (Kass v Kass, 91 NY2d 554, 566 [1998]).
Accordingly, we must examine the parties' obligations and intentions as manifested in the entire agreement and seek to afford the language an interpretation that is sensible, practical, fair, and reasonable (Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 [2009]; Abiele Constr. v New York City School Constr. Auth., 91 NY2d 1, 9-10 [1997]; Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 400 [1977]). This rule is applied "with even greater force in commercial contracts negotiated at arm's length by sophisticated, counseled businesspeople" (Ashwood, 99 AD3d at 7, citing, inter alia, Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]). Finally, as the ATSC agreements are interrelated, they must be read together (PETRA CRE CDO 2007-1, Ltd. v Morgans Group LLC, 84 AD3d 614, 615 [1st Dept 2011], lv denied 17 NY3d 711 [2011]).
The AAL and the LAA each contain a distinct termination provision. Section 7.2 of the AAL permits unilateral termination:
"Subject to the conditions set forth in this Section 7.2, each Party shall have the right, upon thirty (30) days' written notice . . ., to terminate with respect to itself all but not less than all of the following: (1) this Agreement; (2) the right of the Licensing Administrator to grant additional sublicenses under its license or sublicense granted by such terminating Party pursuant to Section 2.3 of this Agreement; and (3) the [LAA]."
Section 7.2 also provides that neither party may terminate the agreement from 2007 to 2012, which are the first five years of the agreement. The AAL also sets forth a schedule of early termination penalties by reducing the terminating party's royalty payments in years six through nine.
Section 11.2.1 of the LAA states in relevant part:
"At any time after January 1, 2017, each Licensor shall have the right upon thirty (30) days' written notice . . ., to terminate with respect to itself all, but not less than all, of the following: (i) this Agreement; (ii) the right of the Licensing Administrator to grant additional sublicenses under its license or sublicense to the Licensing Administrator granted pursuant to Section 2.3 of the [AAL]; and (iii) the [AAL]."
The LAA also provides for other methods of termination, including termination upon expiration, invalidation, sale, or assignment of all of the licensor's included patents, or upon a determination by two-thirds of pool members that the licensing administrator is in breach, insolvent, or in liquidation.
Based on the clear language of AAL § 7.2, defendant, after September 2012, had a unilateral right to terminate "all but not less than all" of the AAL, LAA and plaintiff's sublicensing right so long as the agreements were terminated simultaneously and defendant accepted a reduced royalty (see Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002] [if a contract "on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity"]).
Contrary to plaintiff's assertion, LAA § 11.2.1 does not prohibit defendant from exercising its termination right under AAL § 7.2. Interpreting the LAA and AAL together, it is clear that defendant has the right to unilaterally terminate (see PETRA, 84 AD3d at 615). LAA § 11.2.1 by its plain terms only applies to defendant's termination right after January 1, 2017. The LAA is silent as to defendant's termination right before January 1, 2017. Indeed there is no inconsistency in this interpretation because the provisions "simply apply to different situations" (Vornado 40 E. 66th St. Member LLC v Krizia SPA, 135 AD3d 649, 649 [1st Dept 2016]). LAA § 11.2.1 allows for termination after January 1, 2017 without financial consequence, while AAL § 7.2 permits termination before January 1, 2017 and requires defendant to accept a reduction in royalty payments in accordance with the schedule of early termination penalties.
Under plaintiff's construction, there is no circumstance in which defendant may unilaterally terminate pursuant to AAL § 7.2. Sections 10.2, 11.3 and 11.4 of the LAA and section 3.4 of the AAL authorize the administrative committee (of the licensors) to remove plaintiff as licensing administrator, terminate the LAA between plaintiff and the licensors, and then select and enter into an agreement with a new licensing administrator. According to plaintiff, if this condition occurred after September 2012, defendant could terminate the AAL under section 7.2. However, these sections require a two-thirds vote of the parties that make up the administrative committee. Therefore, defendant cannot plausibly exercise its unilateral right to "terminate with respect to itself" but then be forced to wait for two-thirds of the licensors to agree to cancel plaintiff's role as licensing administrator.
Nor do we accept plaintiff's argument that the LAA may be terminated pursuant to an alternative termination provision, because AAL § 7.2's early termination penalties would never be triggered. For example, under AAL § 3.4 and LAA §§ 10.2 and 11.3, termination on the ground that the licensing administrator is in breach or insolvent is conditioned on entering into a new LAA with a successor licensing administrator. Since the old LAA would immediately be replaced by the new one, there would be no opportunity for defendant to exercise its bargained-for early termination right under AAL § 7.2. Similarly, expiration, invalidation, and assignment of all of a licensor's included patents are separate bases for termination under AAL §§ 7.1 and 9.1.1 and LAA §§ 11.1, 11.4 and 12.2.2 that do not implicate AAL § 7.2.
We note that plaintiff's interpretation that AAL § 7.2 requires the termination of the LAA in order to terminate the AAL improperly renders AAL § 7.2's recitation of penalties for [*4]early termination, between 2012 and 2017, superfluous. If, under plaintiff's construction, AAL § 7.2 required separate termination of the LAA, and the LAA could not be terminated before 2017, then AAL's early termination penalties would never apply.
In short, plaintiff's interpretation fails to give meaning to AAL § 7.2, rendering this section of the AAL superfluous, and must be rejected (see Cara Assoc., L.L.C. v Milstein, 140 AD3d 657, 658 [1st Dept 2016], quoting Corhill Corp. v S.D. Plants, Inc., 9 NY2d 595, 599 [1961] [the "cardinal rule of construction [is] that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect"], lv dismissed 27 NY3d 1181 [2016]).
III.
Plaintiff's argument that defendant did not properly terminate all of the agreements is without merit. By letter dated October 5, 2015, defendant unequivocally terminated the relevant agreements:
"By this letter, and pursuant to § 7.2 of the [AAL}, Samsung gives notice that, effective November 4, 2015, it is terminating with respect to itself (1) the [AAL], (2) the right of the Licensing Administrator to grant additional sublicenses under its license or sublicense granted by Samsung pursuant to Section 2.3 of the [AAL], and (3) the ATSC Licensing Administrator Agreement entered into pursuant to Section 2.2 of the [AAL]."
Clearly, on this record, defendant sought to terminate the LAA, AAL and plaintiff's sublicensing right. Defendant's subsequent letter dated November 30, 2016 does not confirm that defendant only terminated the AAL and the PPL; rather, the November 30, 2016 letter is "without waiver of, or prejudice to, any termination rights previously exercised by [defendant] pursuant to Section 7.2 of the [AAL]." Nor has defendant waived the argument that it gave notice in October 2015 that it was terminating the LAA pursuant to AAL § 7.2 by not raising it below (see Vanship Holdings Ltd. v Energy Infrastructure Acquisition Corp., 65 AD3d 405, 408 [1st Dept 2009] ["So long as the issue is determinative and the record on appeal is sufficient to permit our review, we may consider a new legal argument raised for the first time in this Court"].
Additionally, plaintiff may not rely on alleged representations in Supreme Court, made by defendant's counsel, that defendant did not terminate the LAA in 2015. "A judicial admission [of a fact] is not itself dispositive but merely evidence of the fact admitted" (Tullett Prebon Fin. Servs. v BGC Fin., L.P., 111 AD3d 480, 482 [1st Dept 2013], lv denied 22 NY3d 864 [2014]). As discussed, the record establishes, through the October 2015 letter, that defendant sought to terminate the LAA pursuant to AAL § 7.2.
Plaintiff's reliance on the doctrine of judicial estoppel, binding defendant to its litigating position in Supreme Court, is misplaced. This doctrine "precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed" (Wells Fargo Bank N.A. v Webster Bus. Credit Corp., 113 AD3d 513, 516 [1st Dept 2014] [internal quotation marks omitted and emphasis deleted] lv denied 23 NY3d 902 [2014]). Because defendant did not prevail on its claim in Supreme Court, the doctrine of judicial estoppel does not apply (id.; Kvest LLC v Cohen, 86 AD3d 481, 482 [1st Dept 2011]).
IV.
Finally, we reject plaintiff's argument that the conditions for terminating the PPL were not properly met.
The PPL's termination provision is very broad, allowing termination at any time, upon 30 days' written notice. Contrary to plaintiff's claim, the requirement that the licensee pay royalties [*5]accrued before termination within 30 days is not a condition subsequent to the ability to terminate. "Conditions subsequent are disfavored and are not found to exist unless the intention to create them is clearly expressed" (Stratis v Doyle, 176 AD2d 1096, 1098 [3d Dept 1991]; accord Matter of Matthews Trust No. 1, 61 AD3d 511, 514 [1st Dept 2009], lv denied 13 NY3d 702 [2009]). Here, the PPL does not make termination "subject to" or conditional upon payment of royalties, and instead states that the royalty obligations "survive" termination.
As payment of outstanding royalties is not a condition subsequent to termination, it does not matter whether it was satisfied in order for the termination to be valid.
Accordingly, the judgment of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered January 16, 2018, in favor of plaintiff in the total sum of $115,121,061.63, should be reversed, on the law, without costs, and the complaint and all counterclaims dismissed. The Clerk is directed to enter an amended judgment accordingly. The appeals from orders, same court and Justice, entered on or about November 28, 2016, on or about May 4, 2017, and August 25, 2017, should be dismissed, without costs, as subsumed in the appeal from the judgment.
All concur.
Judgment Supreme Court, New York County (Shirley Werner Kornreich, J.), entered January 16, 2018, reversed, on the law, without costs, and the complaint and all counterclaims dismissed. The Clerk is directed to enter an amended judgment accordingly. Appeals from orders, same court and Justice, entered on or about November 28, 2016, on or about May 4, 2017, and August 25, 2017, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Singh, J. All concur.
Friedman, J.P., Gische, Kahn, Singh, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 20, 2018
CLERK