# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

360 CAMPAIGN CONSULTING, LLC, a New York limited liability company, on behalf of itself and derivatively on behalf of The Outreach Team, LLC,

      Plaintiff,

v.

DIVERSITY COMMUNICATION, LLC, a Wyoming limited liability company, GRASSROOTS TEAM LLC, a Delaware limited liability company, STEVEN RUFO, and an individual known as DIVERSITY PRINCIPAL,

      Defendants,

and

THE OUTREACH TEAM, LLC, a Delaware limited liability company,

      Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)  C.A. No. 2019-0807-MTZ
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## MEMORANDUM OPINION

Date Submitted: December 5, 2019
Date Decided: March 20, 2020

Martin S. Lessner and Alberto E. Chávez, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Steven J. Cohen and Stella L. Sainty, WACHTEL MISSRY LLP, New York, New York; *Attorneys for Plaintiff 360 Campaign Consulting, LLC.*

Raymond J. DiCamillo, Brock E. Czeschin, and Megan E. O'Connor, RICHARDS, LAYTON, & FINGER, P.A., Wilmington, Delaware; *Attorneys for Defendants Diversity Communication, LLC, Grassroots Team LLC, Philip Radford and Steven Rufo*.

Mariam W. Tadros and Roya Vasseghi, REES BROOME, PC, Tysons Corner, Virginia; *Attorneys for Defendants Diversity Communication, LLC, Grassroots Team, LLC, and Philip Radford.*

Kellie Budd, DOUMAR MARTIN, PLLC, Arlington, Virginia; *Attorneys for Defendant Steven Rufo.*

**ZURN, Vice Chancellor**

This opinion decides whether a governing limited liability company ("LLC") agreement requires the claims asserted in this action to be arbitrated. The defendants argue that all of the claims must be arbitrated; the plaintiff argues that none should be. The language of the LLC agreement guides the Court to a middle place. The agreement provides that "dispute[s], controvers[ies] or claim[s] between Members arising out of or relating to this Agreement" are subject to arbitration. Some of the claims asserted in this action are between the LLC's members and "aris[e] out of or relat[e] to" the LLC agreement, but other claims do not meet those criteria. I find that the only claims to be arbitrated are the claims between the LLC's members that arise out of or relate to the LLC agreement, as contemplated by the arbitration clause's plain language. Because resolution of the claims to be arbitrated may affect or moot the claims remaining before this Court, this action will be stayed pending arbitration of those claims.

## I.    BACKGROUND

This action arises from a dispute between the two members of The Outreach Team, LLC ("TOT" or the "Company").[1] TOT is a Delaware limited liability company that conducts face-to-face fundraising canvassing.[2] TOT's two members were Plaintiff 360 Campaign Consulting, LLC ("360") and Defendant Diversity

[1] Docket Item ("D.I.") 1 ¶¶ 1, 28 [hereinafter "Compl."].

[2] *Id.* ¶¶ 1, 10.

Communication, LLC ("Diversity"), until November 16, 2019, when Diversity effectively resigned as a member of the Company.[3] Before then, 360 and Diversity each held 50% of the membership interests of TOT.[4] Non-party Clayt Freed is 360's sole member and manager.[5] Defendant Philip D. Radford is Diversity's sole member.[6] Defendant Steven Rufo allegedly served as TOT's Manager and National Canvass Director until he resigned on August 14, 2019.[7]

360 alleges that, after Diversity failed to force a buyout of 360's interest in TOT, Diversity formed Defendant Grassroots Team LLC ("Grassroots") to strip TOT of its assets and continue TOT's business under the Grassroots name.[8] According to 360's Complaint, Defendants deprived TOT of a major client contract and took TOT's management, employees, intellectual property, leases,

---

[3] Pl.'s Answering Br. 1–2, 13 & Ex. B (noting that Diversity resigned on October 17, 2019 and that the resignation would be effective as of November 16, 2019, subject to a determination that Diversity's breaches terminated Diversity's Membership Interest); Defs.' Reply Br. 24 (acknowledging that Diversity resigned on October 17, 2019 and that the resignation would be effective as of November 16, 2019).

[4] Compl. Ex. A at Schedule A.

[5] Compl. ¶ 7.

[6] *Id.* ¶ 9.

[7] *Id.* ¶ 12; Defs.' Opening Br. 2 n.3 ("Rufo disputes that he was the Manager of TOT").

[8] Compl. ¶¶ 2–4.

4

hardware, data, proprietary information, and business model.[9]  Rufo is now a member of Grassroots, as well as its manager.[10]

On October 8, 2019, 360 filed its Complaint, which contains eleven counts. The eleven counts are summarized in the following table:

| Count | Claim | Defendants |
|---|---|---|
| I | Conversion of TOT assets (Compl. ¶¶ 96–101) | Diversity, Grassroots, Rufo, and Radford |
| II | Violation of Delaware Uniform Fraudulent Transfer Act (*id.* ¶¶ 102–111) | Diversity, Grassroots, Rufo, and Radford |
| III | Breach of the LLC Agreement (*id.* ¶¶ 112–127) | Diversity |
| IV | Breach of fiduciary duty (*id.* ¶¶ 128–132) | Rufo |
| V | Aiding and abetting breach of fiduciary duty (*id.* ¶¶ 133–140) | Radford, Diversity, and Grassroots |
| VI | Breach of a confidentiality and non-disclosure agreement (*id.* ¶¶ 141–45) | Rufo |
| VII | Tortious interference with contractual relations, relating to the LLC Agreement and contracts between TOT and third parties (*id.* ¶¶ 146–151) | Diversity, Grassroots, Rufo, and Radford |
| VIII | Tortious interference with prospective business relations (*id.* ¶¶ 152–56) | Diversity, Grassroots, Rufo, and Radford |
| IX | Imposition of constructive trust (*id.* ¶¶ 157–160) | Grassroots |
| X | Declaratory judgment relating to breach of the LLC Agreement (*id.* ¶¶ 161–68) | Diversity |
| XI | Unjust enrichment (*id.* ¶¶ 169–173) | Diversity, Grassroots, Rufo, and Radford |

---

[9] *Id.* ¶¶ 2–4.

[10] *Id.* ¶ 12.

360 filed motions to expedite and for a status quo order with its Complaint.[11] On October 25, I granted the motion to expedite and denied the motion for a status quo order.[12] On October 17, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction under Court of Chancery Rules 12(b)(1) and 12(b)(3), and to compel arbitration of each of the Counts in the Complaint in view of the arbitration provision in TOT's Limited Liability Company Agreement, dated May 1, 2017 (the "LLC Agreement").[13] The parties briefed the motion, and I heard oral argument on December 4.[14]

## II.    ANALYSIS

Defendants seek dismissal of 360's claims in favor of the arbitration provision at Section 7.07 (the "Arbitration Provision") of the LLC Agreement. "[A] Rule 12(b)(1) motion will be granted if the parties contracted to arbitrate the claims asserted in the complaint."[15] The Court of Chancery lacks subject matter jurisdiction to adjudicate disputes that the parties have contractually agreed to arbitrate.[16] In reviewing whether the Court has subject matter jurisdiction in view

---

[11] D.I. 2, 3.

[12] D.I. 45 at 17:17–19.

[13] D.I. 27.

[14] D.I. 66.

[15] *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *4 (Del. Ch. Mar. 28, 2013).

[16] *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999)).

of an arbitration clause, the Court may consider documents outside the complaint.[17]

"A strong presumption exists in favor of arbitration and, accordingly, contractual arbitration clauses are generally interpreted broadly by the courts. However, this presumption will not trump basic principles of contract interpretation[.]"[18]

The Arbitration Provision states:

**Section 7.07 Deadlock.** In the event of any dispute, controversy or claim between Members arising out of or relating to this Agreement, the parties shall attempt to resolve such dispute among themselves within thirty (30) calendar days from the date either party sends written notice of such dispute to the other party ("**Dispute Notice Date**"). If the parties fail to resolve the dispute within such period, the dispute shall be settled by binding arbitration, before three (3) arbitrators, which shall be the sole and exclusive procedure for the resolution of any such dispute. Within fifteen (15) calendar days after receipt of a notice of intention to arbitrate sent by one party, each party shall designate in writing one (1) arbitrator to resolve the dispute, which two (2) arbitrators shall, in turn, jointly select a third arbitrator within twenty (20) calendar days of their designation, failing which, the third arbitrator shall be appointed by the American Arbitration Association (the "**AAA**") in accordance with the Commercial Arbitration Rules of the AAA (the "**Commercial AAA Rules**") . . . . The arbitration proceedings shall be governed by the Commercial Rules of the AAA but need not be administered by that organization. The parties hereto shall request the arbitrators to use their best efforts to rule on each disputed issue within thirty (30) calendar days after the completion of the hearings; *provided*, however, that the failure of the arbitrators to so rule during such period shall not affect or impair the validity of any arbitration award. The

---

[17] *Id.* at 429 n.15.

[18] *Id.* at 430 (citations omitted).

determination of the arbitrators as to the resolution of any dispute shall be final, binding and conclusive upon all parties hereto . . . . The venue of the arbitration shall be the District of Columbia, and the seat of the arbitration shall be the state of Delaware. Any arbitration award may be entered in and enforced by any court having jurisdiction thereof and the parties hereby consent and submit to the jurisdiction of the courts of any competent jurisdiction for purposes of the enforcement of any arbitration award. The parties agree that after a clear and specific result or factual finding has been made with respect to a particular matter by the arbitrators pursuant to this Section 7.07, such clear and specific result or factual finding shall be deemed to have been finally determined by the parties for all purposes under this Agreement and, thereafter, no party shall have the right to seek any contrary determination in connection with any later arbitration procedure hereto.[19]

## A. The LLC Agreement Does Not Clearly And Unmistakably Demonstrate That Arbitrability Should Be Decided By An Arbitrator.

The Court must first determine the threshold issue of whether arbitrability should be decided by the Court or the arbitrators.[20] This is a "gateway question[] about the scope of an arbitration provision and its applicability to a given

---

[19] Compl. Ex. A § 7.07 (emphasis in original). Defendants argue that the Court cannot consider the heading of the Arbitration Provision because the LLC Agreement expressly deprives the headings in the LLC Agreement of any interpretive weight. *See id.* § 12.05 (stating headings are "in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provisions of this Agreement."). I agree. I have not considered the heading of the Arbitration Provision in my analysis, but included it for completeness.

[20] *Legend Nat. Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at *4 (Del. Ch. Sept. 28, 2012).

8

dispute."[21] Such gateway questions are referred to as questions of "substantive arbitrability."[22] Arbitrability is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."[23] Contracting parties reserve the question of arbitrability for arbitrators only where (1) "the arbitration clause generally provides for arbitration of all disputes"; and (2) the contract "incorporates a set of arbitration rules that empower arbitrators to decide arbitrability."[24] The parties do not dispute that the Arbitration Provision incorporates the Commercial Rules of the AAA, which satisfies the second prong.[25]

This Court must nevertheless decide arbitrability because the Arbitration Provision does not "generally provide for arbitration of all disputes."[26] The only disputes to be arbitrated are those "between Members arising out of or relating to this Agreement."[27] "Member" is defined as "(a) Diversity and [360] and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this

---

[21] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006).

[22] *Id.*

[23] *Id.* at 79 (alteration in original) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 (2002)).

[24] *Id.* at 80.

[25] Compl. Ex. A § 7.07 ("The arbitration proceedings shall be governed by the Commercial Rules of the AAA[.]").

[26] *Willie Gary*, 906 A.2d at 80.

[27] Compl. Ex. A § 7.07.

Agreement and the Act."[28]   Under this plain language, only disputes between Diversity and 360 arising out of or relating to the LLC Agreement must be arbitrated.

The structure of the LLC Agreement underscores the conclusion that the LLC Agreement does not mandate arbitration for all disputes.  The Arbitration Provision appears in Article VII of the LLC Agreement, which defines the authority and responsibilities of the Company's Members, Managers, and Officers. Article VII requires unanimous or majority[29] approval of the Members for numerous actions necessary to conduct the business of the Company.[30]  As a few examples, the Members must provide unanimous written approval to amend the annual budget, enter into contracts exceeding a specified level of materiality, and

---

[28] *Id.* at 6.  The prefatory language of the LLC Agreement also defines Diversity and 360 as the "Members," without provision for future Members.  *Id.* at 1.

[29] Because there are only two Members of the Company, actions requiring majority approval would still require unanimity.  *Id.* at 5 (defining "Majority Interest" to mean "one (1) or more members whose Membership Interests, when combined, exceed fifty percent (50%) of all Membership Interests held by the Members").

[30] *See, e.g.*, *id.* §§ 7.01(a) (requiring unanimous approval by Members to designate one or more Managers), 7.01(b) (requiring the Manager to manage pursuant to the direction of the Members "as approved unanimously" by the Members), 7.01(d) (requiring a majority of membership interests to approve actions by any Manager or agent "with respect to all decisions affecting the business of the Company, including, but not limited to" waiving any rights under the LLC Agreement or admitting any other person as a Member), 7.02(a) (providing that an attorney-in-fact, employee or other agent of the Company may only bind the Company with unanimous approval of the Members, except where otherwise provided by the LLC Agreement), 7.02(c) (listing actions requiring unanimous written approval of all Members).

10

settle any lawsuit on behalf of the Company.[31]  Because the LLC Agreement requires unanimity with respect to a variety of critical business decisions, an inability to reach consensus between two co-equal Members could cause the Company to be unable to operate.  The Arbitration Provision governs the resolution of such disputes between Members.

The LLC Agreement contemplates that other disputes—i.e., disputes not between Members or not arising out of the LLC Agreement—will be adjudicated by courts, not arbitrators.  Section 12.13 generally submits disputes "arising out of" the LLC Agreement to the jurisdiction of Delaware's courts:

---

[31] *Id.* §§ 7.02(c)(iii), (iv), (xiii).

**Section 12.13 Submission to Jurisdiction.** The parties hereby agree that any suit, action or proceeding seeking to enforce any provision of, or ***based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort or otherwise,*** shall be brought in the United States District Court for the District of Delaware or in the Court of Chancery of the State of Delaware (or, if such court lacks subject matter jurisdiction, in the Superior Court of the State of Delaware), so long as one of such courts shall have subject-matter jurisdiction over such suit, action or proceeding, and that any case of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware. Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding that is brought in any such court has been brought in an inconvenient for[u]m.[32]

The LLC Agreement also provides that parties may receive equitable relief from "a court of competent jurisdiction":

**Section 12.15 Equitable Relief.** Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).[33]

---

[32] *Id.* § 12.13 (emphasis added).

[33] *Id.* § 12.15.

12

Taken together, Sections 12.13 and 12.15 provide that any dispute "arising out of or in connection with, this Agreement" shall be heard in the courts of the state of Delaware or in federal courts within Delaware and that such courts may provide broad equitable relief to the litigants.

Delaware courts have previously interpreted similar provisions to be evidence that an arbitration provision does not require an arbitrator to determine the threshold question of arbitrability. In *James & Jackson, LLC v. Willie Gary, LLC*, the Delaware Supreme Court confirmed that a contractual provision permitting courts to provide equitable relief (similar to Section 12.15) was evidence that not all disputes must be referred to arbitration.[34] Similarly, in evaluating the arbitrability of a contract claim, the Delaware Supreme Court in *Kuhn Construction, Inc. v. Diamond State Port Corporation* held that a forum

---

[34] *Willie Gary*, 906 A.2d at 81; *see also Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509652, at *3 (Del. Ch. Aug. 12, 2013) (holding that the court was responsible for determining arbitrability because, in part, the contract permitted the parties to "institute judicial proceedings" to enforce its rights through equitable relief). The contractual provision permitting equitable relief in the LLC Agreement bears more similarity to the provision analyzed in *Willie Gary* than the equitable relief provision in *BAYPO Limited Partnership v. Technology JV, LP*, 940 A.2d 20, 26–27 (Del. Ch. 2007), which was limited to providing equitable and injunctive relief in aid of arbitration. *Id.* at 27 (finding that the equitable relief provision "provide[d] the parties with limited ancillary relief to protect their interests during the pendency of the arbitration process"). Section 12.15 is not limited to equitable relief in aid of arbitration.

13

selection clause selecting Delaware courts (similar to Section 12.13) was evidence that an arbitration provision did not cover "all disputes" arising from the contract.[35]

Here, as in *Willie Gary* and *Kuhn*, the LLC Agreement does not require "all disputes" to be arbitrated because it includes a general forum selection clause for disputes to be resolved in courts and because it contemplates that courts may generally provide equitable relief. The Arbitration Provision carves out only disputes specifically "between Members" and arising out of the LLC Agreement from those general provisions.

In an effort to avoid this outcome, Defendants argue that the Arbitration Provision expressly provides for resolution of "all disputes," that Section 12.13 and Section 12.15 conflict with the Arbitration Provision, and that any ambiguity must be resolved in favor of arbitration. These arguments fall to the language of the LLC Agreement.[36] Holding that the Arbitration Provision requires all disputes to be arbitrated would impermissibly read Sections 12.13 and 12.15 out of the

---

[35] 990 A.2d 393, 395–97 (Del. 2010).

[36] To the extent that 360's argument is premised on the assumption that any arbitration cannot provide equitable relief, that logic does not hold. The Commercial Rules of the AAA, which are incorporated into the Arbitration Provision, permit arbitrators to provide any and all relief within the scope of the parties' agreement, including equitable relief. *See* AAA Commercial Rule 47 (as amended and effective Oct. 1, 2013) ("The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.").

contract, while also expanding the Arbitration Provision beyond its plain terms.[37]

As described above, the Arbitration Provision only requires arbitration of disputes "between Members." Further, under the LLC Agreement, Section 12.16 provides that all rights and remedies "are cumulative and are in addition to and not in substitution for any other rights and remedies[.]"[38] It would be inconsistent with Section 12.16 to read the Arbitration Provision as supplanting the provisions selecting Delaware courts for disputes and agreeing to the availability of equitable relief from "courts of competent jurisdiction."

In sum, although it is accurate that "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration,"[39] there is no reasonable interpretation of the LLC

---

[37] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("[A] court interpreting any contractual provision . . . must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument." (quoting *Elliott Assoc., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)). Defendants argue that Section 12.13 would not be rendered surplusage if all disputes were subject to arbitration because the contract would still require the parties to adjudicate confirmations of arbitration awards in Delaware courts. But Section 12.13 is not, by its terms, limited to confirmations of arbitration awards; and the Arbitration Provision already provides that any arbitration award may be "enforced by any court having jurisdiction thereof and the parties hereby consent and submit to the jurisdiction of the courts of any competent jurisdiction for purposes of the enforcement of any arbitration award." Compl. Ex. A § 7.07. *See also Willie Gary*, 906 A.2d at 81 (affirming the Court of Chancery's rationale that a provision permitting a party to obtain injunctive relief in any court of the United States was not only intended for confirmations of arbitration awards where the contract elsewhere stated that "judgment upon the . . . award may be entered in any court having jurisdiction concerning the matter").

[38] Compl. Ex. A § 12.16.

[39] *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 761 (Del. 1998).

Agreement that requires "all disputes" to be arbitrated. Arbitrability is a question for this Court to resolve.

> **B.** **The Arbitration Provision Is Narrow In Scope And Only Requires Arbitration Of Disputes Between Members Arising Out Of Or Relating To The LLC Agreement.**

The parties contest the arbitrability of all eleven counts of the Complaint. To determine whether the counts are subject to arbitration, I must engage in a two-part inquiry, as set forth by the Delaware Supreme Court in *Parfi Holding AB v. Mirror Image Internet, Inc.*:

> When the arbitrability of a claim is disputed, the court is faced with two issues. First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.[40]

The Arbitration Provision is narrow in scope. It compels arbitration with respect to "any dispute, controversy or claim between Members arising out of or relating to this Agreement."[41] The LLC Agreement sends disputes not between Members, or not arising out of that Agreement, to the courts. Because the

---

[40] 817 A.2d 149, 155 (Del. 2002).

[41] Compl. Ex. A § 7.07.

16

Arbitration Provision is narrow, I will evaluate "if the cause of action pursued in court directly relates to a right in the contract" to determine whether each count should be arbitrated.[42]

### 1. The Claims Arising From Alleged Breaches Of The LLC Agreement Between The Members Are Subject To Arbitration (Counts III, VII, and X).

Counts III, VII, and X of the Complaint must be arbitrated because they are claims between the Company's Members that relate to the LLC Agreement. Count III alleges that Diversity breached the provisions of the LLC Agreement by (1) improperly transferring assets without 360's approval; (2) forming Grassroots to directly compete with the Company; and (3) misappropriating the Company's confidential information.[43] Count X seeks declaratory relief for the same breaches, as well as a declaratory judgment that 360 is not in material breach of the LLC Agreement.[44] Count VII alleges, in part, that Diversity tortiously interfered with the LLC Agreement.[45] That aspect of Count VII facially "relate[s] to" the LLC

---

[42] *Parfi*, 817 A.2d at 155. Even where an arbitration clause is determined to be broad, if a cause of action does not touch on contract rights or contract performance, that claim cannot be arbitrated even if the claim "arise[s] from some or all of the same facts that relate to the transactions that provide[] the basis for [the] contract claims." *Id.* at 155–60.

[43] Compl. ¶¶ 112–27 (citing Compl. Ex. A §§ 7.02, 7.08, 12.03 and 12.15).

[44] *Id.* ¶¶ 161–68.

[45] In addition to alleging that Diversity tortiously interfered with the LLC Agreement, Count VII alleges that Diversity tortiously interfered with the Company's contracts with third parties and that Rufo, Radford, and Grassroots tortiously interfered with the LLC Agreements and contracts between the Company and third parties. *Id.* ¶¶ 146–51.

17

Agreement.[46]  These claims are "between Members" and "aris[e] out of or relat[e] to this Agreement,"[47] and so fall within the scope of the Arbitration Provision.

360 argues that Diversity cannot invoke the Arbitration Provision because Diversity ceased to be a Member on or around November 16, 2019, after the alleged events, after 360 filed its Complaint, and after Diversity filed the present motion to dismiss in favor of arbitration. Diversity invoked the Arbitration Provision while it was still a Member.  The provision regarding Member resignation does not provide that a Member that subsequently resigned cannot arbitrate disputes that arose before its resignation.[48]

360 has not cited any statutory or case law to support the argument that Diversity forfeited its rights to arbitration upon its resignation.  Instead, 360 argues that (1) because Section 12.03(d) imposes confidentiality obligations on a Member, the remainder of the LLC Agreement does not survive a Member's withdrawal; and (2) the parties agreed to jurisdiction in the Court of Chancery.  Neither argument bears weight.  Section 12.03(d) says nothing about arbitrability or a Member's right to seek arbitration of a claim pursuant to the Arbitration Provision after it has

---

[46] *Id.* ¶¶ 147–48.

[47] Compl. Ex. A § 7.07.  Plaintiff conceded that there is "something in Count III that falls under [Section] 7.07" of the agreement, and I agree.  *See* D.I. 65 at 39:8–11.

[48] Compl. Ex. A §§ 4.03(a), 4.04.  The Delaware LLC Act is also silent regarding the rights of a member that resigns.  *See* 6 *Del. C.* § 18-603.

resigned.[49] And, in keeping with how Section 12.15 and the Arbitration Provision work together, the fact that Diversity generally consented to jurisdiction in Delaware does not deprive Diversity of its specific right to seek arbitration of claims governed by the Arbitration Provision. As explained, to hold that Diversity generally cannot arbitrate claims because of the forum selection clause would render the Arbitration Provision a dead letter.

More broadly, in the absence of any language in the LLC Agreement regarding the effect of a Member's resignation on the Arbitration Provision, the Arbitration Provision governs 360's agreement-based disputes with Diversity based on actions taken when they were both Members. Resignation does not automatically render an arbitration provision in an LLC agreement inapplicable to the resigned member. In *Julian v. Julian*, this Court ordered that a member of an LLC who resigned was required to submit his claims for the fair value of his membership interests to arbitration based on the arbitration clauses in the LLC agreements of the LLCs from which he resigned.[50] Indeed, with respect to claims for conduct during the pendency of the original agreement, arbitration clauses may

---

[49] To the extent Section 12.03(d) is relevant to arbitration at all, a Member may more easily maintain confidentiality in arbitration than in a public court.

[50] 2009 WL 2937121, at *2–8 (Del. Ch. Sept. 9, 2009).

19

even survive the termination of an LLC agreement.[51] Under the logic of these cases, the Arbitration Provision continues to govern applicable disputes between Diversity and 360 arising from events that occurred before Diversity resigned. 360 remains bound to arbitrate those disputes as it agreed to do under the LLC Agreement. Had the Members of the LLC wanted to require Members to forfeit all rights to arbitration upon resignation, they could have easily contracted for that result.[52] In the absence of contractual language providing otherwise, I conclude Diversity's resignation does not permit 360 to disclaim its agreement to arbitrate disputes between itself and Diversity as Members.

For the foregoing reasons, Counts III and X must be arbitrated, and Count VII must be arbitrated to the extent that it claims that Diversity tortiously interfered with the LLC Agreement.

---

[51] "Courts . . . have found that arbitration provisions can continue to apply to actions taken while the original contract was effective, even if the original has since been replaced by another." *3850 & 3860 Colonial Blvd., LLC v. Griffin*, 2015 WL 894928, at *5 (Del. Ch. Feb. 26, 2015) (citing *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 626 (N.Y. 1997)); *see also id.* ("Generally, a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder, irrespective of whether the termination and discharge resulted from the natural expiration of the term of the agreement, a unilateral termination under a notice of cancellation provision or the breach of the agreement by one of the parties.") (citations omitted)).

[52] I note that such a provision would have been consistent with Article VII's focus on efficient resolution of Member conflict in the context of Company governance. But I see no basis to limit the Arbitration Provision to disputes between present Members.

## 2. The Non-Contract Claims Between The Members Are Not Subject To Arbitration (Counts I, II, V, VII, VIII, and XI).

Counts I, II, V, VII, VIII, and XI contain claims that do not "directly relate[]" to a right in the contract" and are not arbitrable under the Arbitration Provision.[53]

Counts I and II address Diversity's appropriation of the Company's assets. Count I alleges that Diversity tortiously converted the Company's assets.[54] Count II alleges that 360, as a creditor of the Company, is entitled to relief from Diversity under the Delaware Uniform Fraudulent Transfer Act.[55] This claim centers on the allegation that Diversity and the other defendants misappropriated the Company's assets "for the purpose of evading and denying 360's and TOT's claims against them."[56] The claim that Diversity converted Company assets does not arise from the LLC Agreement.[57] Neither Count I nor Count II directly relates to a right under the LLC Agreement; they are not arbitrable.

Count V alleges that Diversity aided and abetted Rufo's breach of fiduciary duties to the Company. This claim does not arise out of or relate to the LLC Agreement. None of the elements of aiding and abetting a breach of fiduciary duty

---

[53] *See Parfi*, 817 A.2d at 155.

[54] Compl. ¶¶ 96–101.

[55] *Id.* ¶¶ 102–111.

[56] *Id.* ¶ 105.

[57] *Triton Constr. Co., Inc. v. Eastern Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *24 (Del. Ch. May 18, 2009) ("Conversion is the act of dominion wrongly exerted over the property of another, in denial of his right, or inconsistent with it.") (quotation omitted)).

requires analysis of any right under the LLC Agreement.[58] In other circumstances, a claim for aiding and abetting a breach of fiduciary duty could require analysis of an underlying LLC agreement. Here, the LLC Agreement is silent as to the scope of Rufo's fiduciary duties, and there is no need to consider the LLC Agreement when adjudicating whether Rufo breached his fiduciary duties. Rufo's fiduciary duties arise from common law, not the LLC Agreement.[59] Further, as explained below, the underlying breach of fiduciary duty claim against Rufo is itself not arbitrable because Rufo was never a Member. Neither the underlying claim of breach of fiduciary duty nor the aiding and abetting claim relates to the LLC Agreement. The aiding and abetting against Diversity claim is not arbitrable.

Counts VII and VIII assert tortious interference with obligations and relationships other than the LLC Agreement. Count VII alleges that Diversity

---

[58] The elements of an aiding and abetting claim are (1) the existence of a fiduciary relationship; (2) a breach of fiduciary duty; (3) knowing participation in the breach; and (4) damages proximately caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

[59] *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. Nov. 28, 2012) ("Like the Delaware General Corporation Law, the LLC Act does not explicitly provide for fiduciary duties of loyalty or care; consequently, the traditional rules of law and equity govern."). *See also* 6 *Del. C.* §§ 18-1101(c) ("To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company . . . the member's or manager's or other person's duties may be *expanded or restricted or eliminated* by provisions in the limited liability company agreement." (emphasis added)), 18-1104 ("In any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties . . . shall govern.").

tortiously interfered with contractual relations relating to contracts that are not the LLC Agreement.[60] Count VIII alleges that Diversity tortiously interfered with a prospective business relationship with a Company customer.[61] These claims do not arise out of or relate to the LLC Agreement and are not arbitrable.

Finally, Count XI alleges that Diversity was unjustly enriched as a result of 360's monetary and non-monetary contributions to the Company prior to the alleged heist.[62] As 360 recognizes, an unjust enrichment claim only applies in the event that the LLC Agreement does not govern.[63] Because the unjust enrichment claim does not relate to any contract right in the LLC Agreement, it is not arbitrable.

### 3.      Claims Not Between The Members Are Not Subject to Arbitration (Counts I, II, IV, VI, VII, VIII, IX, and XI).

Counts I, II, IV, VI, VII, VIII, IX, and XI, which contain claims against the non-Member Defendants, are not arbitrable under the plain language of the Arbitration Provision because they are not claims between Members.[64] The

---

[60] Compl. ¶¶ 146–51.

[61] *Id.* ¶¶ 152–56.

[62] *Id.* ¶¶ 169–73.

[63] *See Nemec v. Shrader*, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009) ("Delaware courts . . . have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract."); Compl. ¶ 172 ("Plaintiff is without a remedy at law if the LLC Agreement does not govern.").

[64] Compl. Ex. A § 7.07.

Arbitration Provision does not require arbitration of claims against Grassroots or Radford.[65] Nor does it provide for arbitration of claims against Rufo, an alleged Manager of the Company. As noted above, Article VII of the LLC Agreement defines the rights and obligations of Members, Managers, and Officers.[66] Had the parties to the LLC Agreement sought to submit disputes between Members, Managers, and Officers to arbitration, they easily could have contracted to do so. Accordingly, I will not expand the Arbitration Provision beyond its terms.[67]

### 4. Claims Remaining Before This Court Are Stayed.

This action will be stayed until the completion of the arbitration or if either party can demonstrate good cause to lift the stay. "[T]he granting . . . of a stay by a trial court lies within the discretion of the trial court . . . . The circumstances of the litigation may be such as to make it desirable to stay the first action, and to permit

---

[65] *Id.* at 6 (defining "Member" as "(a) Diversity and [360] and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the Act").

[66] *See id.* §§ 7.01 (defining "Manager"), 7.03 (defining "Officer").

[67] *Parfi*, 817 A.2d at 156 ("The policy that favors alternate dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract interpretation."). *See also Vintage Rodeo Parent, LLC v. Rent-A-Center, Inc.*, 2019 WL 1223026, at *21 (Del. Ch. Mar. 14, 2019) ("As a matter of contractual interpretation, I should refrain from writing a provision into a contract when the parties could have done so themselves, but chose not to."). Although the parties briefed the question of whether Rufo, Radford, and Grassroots may invoke the arbitration provision, that question is not relevant because I find that the plain language of the LLC Agreement does not permit arbitration of disputes between non-Members.

the subsequent action to proceed to conclusion."[68]  That is the case here.  Because the breach of contract claims to be resolved by the arbitrators may affect the remaining claims before this Court, it is appropriate to stay this action pending the completion of the arbitration in the interests of judicial economy and to avoid potential inconsistencies between the decisions of this tribunal and those of the arbitrators.  The parties may use discovery obtained in this action in the arbitration.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and compel arbitration is granted in part and denied in part.  Counts III and X must be arbitrated under the Arbitration Provision.  Counts I, II, IV, V, VI, VIII, IX, and XI must be adjudicated by this Court, rather than by an arbitrator.  Count VII is in the province of arbitration only to the extent that the claim alleges that Diversity tortiously interfered with the LLC Agreement; claims that Diversity tortiously interfered with other agreements, and that Radford, Rufo, and Grassroots tortiously interfered with the Company's agreements, are before this Court.  This action is stayed pending the results of the arbitration.

The parties shall submit a conforming implementing order.

---

[68] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 683 (Del. 1964), *overruled on other grounds by Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520 (Del. 1969).